[Civ. No. 5037.  Third Appellate District.—January 27, 1934.]

ESTHER B. GELFAND, Appellant, v. SIMON GELFAND, Respondent.

Sigmund S'Renco and Frank C. Hoyt for Appellant.

Charles C. Montgomery for Respondent.

PLUMMER, J.—In this action, prosecuted by the plaintiff to obtain an interlocutory decree of divorce and an award of community property, the plaintiff had judgment granting the prayer of her complaint in so far as the marriage relation theretofore existing between the plaintiff and the de-

fendant was dissolved, but in its decree the court found that there was no community property, and from this portion of the decree the appellant's argument is directed. The appellant also presents an appeal from the order of the court denying her motion for a new trial. As no appeal lies from such an order, that portion of the appeal is hereby dismissed.

The notice of appeal also purports to include that portion of the decree awarding an interlocutory judgment of divorce. As no reason is presented for setting aside or annulling that portion of the decree, an examination of the record discloses no reason for disturbing the same, and the interlocutory decree of divorce, in so far as it purports to dissolve the marriage relation theretofore existing between the plaintiff and the defendant, is hereby affirmed.

The record shows that the plaintiff and defendant intermarried on or about the fifth day of April, 1914, in the city of Baltimore; that at the time of the marriage neither the plaintiff nor the defendant possessed any property; that the plaintiff and defendant, save and except for a short sojourn in the northwest, made their home in the city of Baltimore from the date of their marriage until some time during the year 1927. The record does not disclose the exact date when the parties hereto established their residence in the state of California. It is, however, admitted that they were residents of the state of California in December, 1927, and that this residence continued as to both parties until the latter part of June, 1931, when the defendant left the state of California and established his residence in the city of New York.

While residents of the city of Baltimore the plaintiff and defendant accumulated considerable property, estimated in the record to be of the value of approximately one million dollars. A large portion of this property was and is represented by the capital stock in a corporation organized under the laws of the state of Maryland, known as the "Gelfand Manufacturing Company". The testimony discloses that both the plaintiff and the defendant devoted a considerable portion of their time to the conduct of the business before it was taken over by the Gelfand Manufacturing Company, and that the accumulations of the property which finally became merged in the Gelfand Manufacturing Company had

been mostly acquired prior to the organization of the company.

Under the laws of the state of Maryland personal property acquired by husband and wife during the continuance of their marriage relation becomes and constitutes a separate property of the husband, subject only to dower rights.

It further appears from the record that the defendant, owing to ill health, from 1924 until 1926, resided in the state of California, though our attention has not been called to any testimony indicating that the defendant had become domiciled within this state, or that a matrimonial domicile was established here prior to the month of December, 1927.

While the attack of the plaintiff is directed to several of the findings, only one is vital and requires our serious attention. Finding No. 3 is in the following words: "That there is no community property of the parties." This finding the appellant holds merely to be a conclusion of law. Whether this contention is correct or incorrect is not really material, because if a conclusion of law, it would not necessitate a reversal if an examination of the record satisfied us that a finding should be inserted establishing a basis for the conclusion that there is no community property. On the other hand, if the above-quoted language of the court is considered as a finding of fact and not as a conclusion of law, if the testimony in the record shows that there is community property, then a reversal must be ordered in so far as the judgment refers to the absence of community property.

On the second day of May, 1927, the defendant, pursuant to the laws of the state of Maryland, proceeded to establish a trust in which he placed all of the stock owned by him in the Gelfand Manufacturing Company in the possession, control and dominion of certain trustees therein named, reserving to himself during his lifetime whatever income there might be upon said stock, and providing for the payment of the income thereof after his death, to the three children therein named, and also making some provision for the plaintiff in this action.

It also appears that during the continuance of the marriage relation, the defendant obtained life insurance policies upon his life in the sum of $310,000, payable to beneficiaries therein named, not including the plaintiff.

On the theory that the defendant still retained an interest, to wit, his right to receive the income of the trust established by him, and also of the insurance policies being choses in action, it is contended that upon the coming to this state and the establishment of a residence and domicile therein during the month of December, 1927, all of the property referred to became the community assets of the plaintiff and the defendant, section 164 of the Civil Code being relied upon, which provides that ''all property acquired after marriage by either husband or wife, or both, including real property situate in this state, and personal property wherever situate, heretofore or hereafter acquired while domiciled elsewhere, which would not have been the separate property of either if acquired while domiciled in this state, is community property''.

The record also presents the fact that no income was received from the trust property by the defendant during the time that the matrimonial domicile existed in this state, but during said period the respondent did receive several thousand dollars by way of salary.

The exact amount cannot be ascertained from the record. His own testimony is that for two years he received $20,000 a year; that for one year he received approximately $13,000; and for a portion of another year, between $7,000 and $8,000. Out of the sums of money so received by the defendant, it appears that during each of the years of the existence of the domicile in this state the defendant paid or had paid for him on the insurance policies referred to herein, as premiums, the sum of $8,175.17 per annum. Whether the defendant paid four premium installments or only three cannot be definitely determined from the record. However, it is correct to say that the defendant paid in such premiums a sum in excess of $24,000.

Being apparently conceded that the situs of personal property follows the person of the owner, we cite no authorities in support of such statement. Under this rule of personal property under the control and dominion of the defendant, it would be held to have been brought to California in December, 1927, the date of the establishment here of the matrimonial domicile by the plaintiff and the defendant. In this particular it may be mentioned that the insurance policies prior to this date had been pledged by

the defendant as security for loans aggregating between $37,000 and $38,000, and were held in possession of the companies advancing the loan, or placed under their control and dominion.

In support of her contention that the insurance policies being choses in action, in legal effect came to California with the coming of the defendant, and under the provisions of section 164 of the Civil Code became community property, the case of *Estate of Thornton*, (Cal.) [19 Pac. (2d) 778], is called to our attention. Whatever persuasive effect may be the result of the reasoning contained in the opinion in that case, it cannot be considered as authority, for the simple reason that a rehearing has been granted therein. If established as the law of this state, it would result in a holding that a considerable portion of the estate vested in the defendant by the laws of Maryland, became community property when the parties established a residence here. But if not finally held to set forth the true rule that should be applied to property acquired in a foreign state when the parties acquiring the same come to this state, there nevertheless exists several thousand dollars of property which became community assets while the plaintiff and the defendant were residents of this state.

In the instant case we have an additional complication. The *corpus* of the personal property was acquired in the state of Maryland, and while the parties to this action were there domiciled. Subsequently the domicile was removed to the state of California, and existed there for a period of at least three and one-half years, when the defendant established his residence in the state of New York, where, under the laws of the state of New York, his right of ownership and control to the personal property are the same as under the laws of the state of Maryland, where the property was acquired. During the time of the existence of the matrimonial domicile in this state, several thousand dollars in premiums were paid on the insurance policies referred to, which payments were made out of the salary earned by the defendant during the period of residence in California, which earnings would be community property.

The rule contended for by the respondent is set forth in the text found in 31 C. J. 15, to wit: "Property rights already acquired are not changed by a change of domicile.

Accordingly, vested rights of property acquired in a foreign state, or country, by married persons there domiciled will not be divested by a change of domicile to a community property state, for the latter state will recognize and protect the rights of married persons acquired under the foreign laws. Conversely, where married persons residing in a community-law state move to a common-law state, their property rights acquired under the community will be protected. And the same rule prevails as between two community-law states. These (rules) do not admit the controlling force of foreign laws within the state, but merely recognize rights vested under such laws, treating the foreign laws as evidentiary facts necessary to be proved and making part of the chain of title to the right asserted or claimed. Hence, where the foreign law is not proved, the court will proceed under the local laws. Where there is a conflict, and it is doubtful which law should prevail, the law of the forum will be applied. These rules are subject to these limitations, that the forum must be provided with the necessary remedies and processes to protect and enforce the rights involved, and their assertion must not be contrary to the laws or policies of the state of the forum, nor violate the rights of its citizens, nor create unknown or prohibited tenures.'' Numerous authorities are cited in the footnotes elaborating the text which we have quoted, but from what we are about to say, we think an analysis thereof unnecessary.

If the rule announced in Corpus Juris, *supra,* be the correct statement of the law as applicable to the instant case, the *corpus* of the personal property referred to never became community property. On the other hand, if section 164 of the Civil Code is constitutional as applied to the circumstances involved herein, and the character of the property changes with the change of domicile when the parties came to this state, the community status was established, and when the matrimonial domicile in this state was dissolved, the separate property rule became effective upon the defendant becoming a resident of the state of New York. We are also confronted with the proposition that the law of the forum, as stated in Corpus Juris, cannot reach out and lay hold of the *corpus* of the personal property involved in this action.

There is another distinctive fact with which we have to deal. The premiums paid upon the insurance policies were taken out in the state where the common-law rule prevails as to personal property. The premiums were in part paid out of separate property. However, during the three and one-half year period that the matrimonial domicile existed in this state, the premiums were paid out of community funds. Thus, the rule announced in the case of *New York Life Ins. Co.* v. *Bank of Italy*, 60 Cal. App. 602 [214 Pac. 61], and also in the case of *Union Mutual Life Ins. Co.* v. *Broderick*, 196 Cal. 497 [238 Pac. 1034], where it is said that if the premiums on an insurance policy issued on the life of the husband are paid entirely from community funds, the policy is a community asset, cannot be strictly applied, nor could it be strictly applied if we were dealing with the proceeds of the policies when matured, if the policies were so paid as to render the proceeds within the reach of processes issued by the courts of this state. ▮ In actions for divorce the court, in dealing with property rights, is not concerned with what may be the ultimate results upon the death of one of the parties, but has before it the settlement of the property rights as existing at the time of the beginning of the action and the trial thereof. ▮ Upon the dissolution of the marriage relation the law is well settled that the insurable interest of the wife on the life of the former husband does not exist. This, however, does not foreclose her right or claim to her interest in any property which may have been used in the payment of premiums, which right we think the court is empowered to determine and may cause a defendant to make compensation out of his separate property for the benefit of the wife to the extent that her community right has been invaded by the payment of premiums upon a policy where she would have no right to share in the proceeds in the event of the policy having matured.

The rule which we think applicable, and which the trial court should have followed is found in the second edition of "McKay on Community Property", page 325, section 488. It is there said (referring to the state of Louisiana, where the community property rule is similar to that of our own) : "In Louisiana the question of accounting has been before the Supreme Court in several cases. In that state it is a general rule that if community funds are used for a separate

purpose, or separate funds for a community purpose, compensation must be made. In *Succession of Bofenschen,* where the husband had insured his own life for the benefit of his wife, the court said: 'The premiums were paid by the husband out of community funds, over which he had control as head and master thereof. The most that could be claimed would be the reimbursement of the premiums to the community, but we do not think that claim well founded.' In the latter case where the husband had used community funds to pay the premiums on a separate policy in his own favor, the court used this language: 'We are of opinion, however, that the community is entitled to reimbursement of the amount of the several premiums which were paid, after marriage, out of its funds. We are aware that, in the case of insurance by the husband for the benefit of the wife, it has been held that the latter takes the fund without liability to reimburse the community the premiums paid by it. . . . Hence, the premiums paid by the community fall under the common rule entitling it to reimbursement out of the separate estate of all expenditures made by it for the separate benefit of the latter.' "

■ Applying the rule here stated as the circumstances may require, if the policy is made out in favor of the wife, then the community funds applied in payment of the premiums would not necessitate reimbursement, but if the policy is taken out in favor of the husband, or any other persons except the wife is made the beneficiary, and community funds are used in the payment of premiums, then upon the dissolution of the marriage relation the court should require reimbursement to be made out of the separate funds of the husband in order that the community rights of the wife may not be allowed to be impaired by reason of the husband having applied community funds to his separate interests.

To the same effect in principle is the case of *Whiteselle* v. *Northwestern Mutual Life Ins. Co.,* (Tex. Com. App.) 221 S. W. 575, where it is said that the adjustment of the property rights, if existent, should have been made in the divorce action. (See, also, 31 C. J., p. 35, sec. 1124.)

Respondent further contends that the questions involved herein have heretofore been decided adversely to the plaintiff in an action prosecuted in the state of Maryland. A

review of the record, however, discloses clearly that no property rights were involved, contested or adjudicated in that action, and that nothing appears in the judgment-roll of the Maryland action involving any of the questions which we have herein discussed.

■ It follows from what we have said that the interlocutory decree of divorce entered in this action should be affirmed in all particulars, save and except as to the settlement of the property rights of the parties to this action.

It is therefore ordered that save and except as to the community property rights of the parties, the decree of the trial court heretofore entered in this cause is affirmed. As to the community rights involved in this action the decree is reversed and the cause remanded to the trial court for further proceedings to determine the community rights of the parties hereto, in accordance with the views expressed in this opinion.

Appellant is awarded costs.

Pullen, P. J., and Thompson, J., concurred.