[Civ. No. 12188.   First Dist., Div. One.   Feb. 26, 1943.]

HARRY SCHEIBE, Appellant, v. MARTHA SCHEIBE, Respondent.

Roland Maxwell for Appellant.

John J. Jones for Respondent.

KNIGHT, J.—These two appeals, numbered 12188 and 12189, were taken from final judgments entered in separate actions and are presented on two clerk's transcripts, one reporter's transcript, and a single set of briefs. The parties to the actions are husband and wife; and the husband appeals. The grounds urged for reversal involve the sufficiency of the evidence and the validity of certain provisions embodied in the judgments.

The parties were married in Wisconsin in 1914, and moved to San Jose in 1920, where they lived together until September 8, 1932. On that date appellant went to Los Angeles county permanently to reside, and respondent continued to

live in the San Jose home the parties had theretofore acquired. After a lapse of nine years appellant brought the present actions in Los Angeles County, one for divorce upon the ground of desertion and cruelty, and the other for the partition of a balance of approximately $2,085 plus interest on deposit in a joint tenancy account the parties carried with San Jose Building-Loan Association. The actions were subsequently transferred to and heard and determined in the county of Santa Clara.

In the partition suit respondent joined in the request that the money be divided and in the other action she filed a cross-complaint for divorce upon the grounds of desertion, wilful neglect, and cruelty. There was one child, a son, but at the time of the commencement of these actions he was 26 years old. In their respective divorce complaints the parties alleged that the home and the furnishings therein were community property. Appellant asked that said property be divided equally and respondent asked that all of it be awarded to her. In her cross-complaint she alleged that the money on deposit also was community property, but in the prayer of her cross-complaint she requested that only half thereof be set aside to her. She made no request for alimony, but asked for an allowance of attorney's fees and prayed for general relief.

The causes came on for trial on December 17, 1941, and in the partition suit it was agreed that the money on deposit should be divided equally. However, both parties claimed an allowance therefrom as attorneys' fees, whereupon the trial court stated that its ruling on the application for attorneys' fees would be reserved until the divorce case was tried. The court then proceeded with the hearing of the divorce action, and at the conclusion of the evidence announced that no allowance for attorneys' fees would be made in either case; that the divorce would be granted to the wife on the ground of cruelty, and that she would be awarded the dwelling and the furnishings; furthermore that the wife would be awarded seventy-five per cent of the money on deposit in the joint tenancy account. Counsel for appellant protested against awarding respondent three-quarters of the money upon the ground that under the joint tenancy law the husband was entitled to half, and that at the commencement of the trial it had been so agreed. The court stated, however, that if counsel did not "want it that way" the court would "do it some other way," by making an allowance as alimony and

"put a lien" on appellant's half of the moneys in said joint account. Following some discussion permission was granted to file briefs, and thereafter, on January 13, 1942, the trial court filed its findings and judgments whereby the divorce was granted to respondent on the ground of cruelty and she was awarded the dwelling and furnishings; the balance on deposit in the joint account was divided equally, each party being awarded $1074.39; but it was ordered that appellant pay to respondent "as alimony" the sum of $50 a month for ten months and $37.19 for the eleventh month, commencing as of April 17, 1941 (presumably the date of the commencement of the action), and aggregating $537.19; and to secure the payment of said aggregate sum a lien was impressed on appellant's half of the moneys in the joint account.

Appellant's first main contention is that the evidence did not justify the granting of the divorce on the ground of cruelty; that the "only proper ground" upon which the divorce could have been granted was desertion, and that consequently he was entitled to an equal division of the community property (Civ. Code, § 146). We are unable to agree with this contention. As in other cases, every intendment is in favor of the findings of the trial court in a divorce case (9 Cal.Jur. p. 780); and although in the present case it must be conceded that the evidence upon which the trial court based its conclusion that a case of cruelty was established, is rather weak, it is legally sufficient in our opinion to preclude interference by a reviewing court. Much of it is conflicting, and that being so no useful purpose would be served by a detailed narration thereof. Speaking generally, it appears therefrom that for two or three years prior to their separation in 1932, the parties had been living together under strained relations, and that there were frequent quarrels which the trial court evidently believed were not due to any fault on the part of respondent. A number of those quarrels were brought about by appellant's failure to secure lucrative employment during the depression years of 1931-2. It appears that during that period respondent was able to find work in the fruit industries, and in the packing houses, but she claimed that appellant made no honest effort to obtain steady employment. Furthermore, there was some testimony of intoxication on the part of appellant, and other evidence tending to show that prior to his departure for Los Angeles appellant had been receiving letters in a clandestine way

from some woman friend, which apparently provoked domestic disturbances and led respondent to believe, as she asserted, that it was because of the other woman that appellant left home. On the other hand, appellant claimed that he was continually "nagged on" by his wife because he. was not working all the time; that she repeatedly told him "to get out and stay out and leave everything as it was and just go"; so he "finally had to pick up and go." At any rate, so the evidence shows, on the morning of the day appellant went away he drove his wife to her place of employment in their De Soto automobile and told her she would have to take the street car in going home; that he was going away and would not be back. She protested his leaving, but he ignored her protests, and afterwards drew $100 from the bank and left town in their automobile. She did not know where he had gone, but about six months later learned through his sister that he was in southern California. In 1936 he wrote respondent three letters in which he made it plain that he would never again live with her and that his only purpose in writing was to arrive at some sort of an understanding as to a severance of their marital status and to obtain an agreement as to their property rights; and the last letter, especially, contained several statements which the trial court was justified in construing as showing a pronounced feeling of disrespect and contempt for respondent. For example, the opening salutation was in these words: "My Wife. Well I got your letter and I must say it is rotten nothing but money thats all you have in your mind . . ."; and she was accused of lying and being "money greedy." Among other things he said were: ". . . I never had a chance to get into any business with your constant nagging and I never will amount to anything as long as you are connected to my affairs"; also, "I can't see why you want to hang onto me. Im telling you, I would never live with you and be contented and I never was contented in all the years of our married life." The letter contained other expressions equally scornful and harsh, but those mentioned are sufficient to show the apparent feeling of bitterness and dislike he entertained toward his wife.

As defined by section 94 of the Civil Code, extreme cruelty is the wrongful infliction of grievous bodily injury or grievous mental suffering upon the other by one party to the marriage; and ever since the decisions in *Barnes* v. *Barnes*, 95 Cal. 171 [30 P. 298, 16 L.R.A. 660], and *Fleming* v. *Flem-*

*ing,* 95 Cal. 430 [30 P. 566, 29 Am.St.Rep. 124], it has been repeatedly held that no arbitrary rule of law can be laid down as to what particular facts must be proved to justify a finding that the complaining party has undergone grievous mental suffering; that a correct decision in such cases depends upon the sound sense of justice of the trial court and that in each case it is a pure question of fact to be deduced from all the circumstances of each particular case, keeping in mind always the intelligence, apparent refinement and delicacy of sentiment of the complaining party. (*Thoele* v. *Thoele,* 102 Cal.App. 387 [282 P. 1001]; *Keener* v. *Keener,* 18 Cal.2d 445 [116 P.2d 1]; *Cline* v. *Cline,* 4 Cal.App.2d 626 [41 P.2d 588]; *Shaw* v. *Shaw,* 122 Cal.App. 172 [9 P.2d 876].) Furthermore, it is held that in determining such question the trial court may consider acts committed subsequent to the separation of the parties (*Palmanteer* v. *Palmanteer,* 11 Cal.2d 570 [81 P.2d 910].) It is apparent, therefore, that in the present case the question of whether the acts and conduct of the appellant were of such a nature as to inflict mental suffering upon respondent was one of pure fact for the determination of the trial court from all the facts and circumstances of the case; and while the state of the evidence may have been such as would have supported an adverse finding of cruelty, it is also legally sufficient to sustain an affirmative finding on that issue; therefore the trial court's conclusion is binding on appeal. In other words, as said in *Keener* v. *Keener, supra,* it is only where the evidence is so slight as to indicate an abuse of discretion that the trial court's conclusion will be disturbed; and in the present case it is our opinion that we would be unwarranted in so holding.

██ Nor is there any merit in appellant's contention that the trial court committed error in denying his motion to strike out certain testimony given in behalf of the respondent as to alleged acts of cruelty which respondent claims took place at least six months prior to the date of the separation. As in other cases, the weight and sufficiency of the evidence offered in a divorce action is a matter for the trial court, and while the acts here complained of as having occurred more than six months from the date of the separation may have been somewhat remote, it was claimed that they were part of a continuous course of cruel conduct; consequently respondent was entitled to have the trial court consider the

same and attach thereto such weight as it deemed proper under the circumstances.

Appellant's final contention is that in the absence of allegations or evidence relating to the matter of alimony the trial court was without legal authority to order appellant to pay to respondent any sum of money, or to subject his half of the joint tenancy account to a lien for the payment thereof. This contention is not sustainable. The award was made by the trial court in the exercise of the authority conferred by section 139 of the Civil Code, the pertinent provisions of which declare: "Where a divorce is granted for an offense of the husband, the court may compel him to provide for the maintenance of the children of the marriage, and to make such suitable allowance to the wife for her support, during her life or for a shorter period as the court may deem just, having regard to the circumstances of the parties respectively; and the court may from time to time modify its orders in these respects."

As pointed out in some of the earlier decisions, notably *Ex parte Spencer*, 83 Cal. 460 [23 P. 395, 7 Am.St.Rep. 266], and *Honey* v. *Honey*, 60 Cal.App. 759 [214 P. 250], also in California Jurisprudence (vol. 1, p. 1010), the award made under said section 139, properly speaking, is not alimony, nor is it merely a substitute for the wife's interest in the community or separate property of the husband. It is an allowance authorized to be made by way of compensation for a wrong done to the wife, and in that sense is regarded as a penalty imposed upon the husband. " 'It proceeds upon the theory that the husband entered upon an obligation which, among other things, bound him to support the wife during the period of their joint lives, and gave to her a right to share in the fruits and accumulations of his skill; that by his own wrong he has forced her to sever the relation which enabled her to enforce this obligation, and for the wrong which thus deprived her of the benefit of the obligation, he must make her compensation. The court is to fix the measure of that compensation by "having regard to the circumstances of the parties respectively"; those circumstances furnishing the best means for determining the extent of her loss. . . . This allowance may be entirely independent of the property then *in esse.*' " (*Honey* v. *Honey, supra*, citing *Ex parte Spencer, supra,* and *Hogarty* v. *Hogarty,* 188 Cal. 625 [206 P. 79].) The power to grant such an award

is incidental to the determination of a divorce action, the same as is the right of a trial court to award the custody of children (*Honey* v. *Honey, supra; Gaston* v. *Gaston,* 114 Cal. App. 542 [46 P. 609, 55 Am.St.Rep. 786]), and the award may be made in the absence of allegations or evidence showing that the husband then owned either separate or community property to which resort may be had to enforce its payment, or that he has the ability to pay. (*Gaston* v. *Gaston, supra; Honey* v. *Honey, supra; Ex parte Spencer, supra.*) Nor is it a ground for reversal that the judgment granting the award lacks the support of a finding or that no evidence was presented in that behalf. (*Stanton* v. *Stanton,* 113 Cal. App. 462 [298 P. 524].) In so holding the court in the case last cited went on to say: "It is true that no evidence relating to an award of money for the support of respondent and the minor child was presented. It is also true that the court made no finding in the matter of such an award. For that matter, the complaint contains no specific prayer for support. But it is to be borne in mind that an allowance of alimony or money for the support of the wife is an incident to a divorce action and the determination as to allowance of alimony is not the trial of an issue in the case (*Gaston* v. *Gaston,* 114 Cal. 542 [55 Am.St.Rep. 86, 46 P. 609] ; *Hunter* v. *Hunter,* 111 Cal. 261 [52 Am.St.Rep. 180, 31 L.R.A. 411, 43 P. 756] ; 1 Cal.Jur.; p. 1011)." ▇ Furthermore, the trial court may award a gross sum (1 Cal.Jur., p. 1018) ; or require periodical payments; and in a proper case may provide that the latter shall start from the date the husband files his appearance in the action or from the commencement of the action (1 Cal.Jur., p. 1012, citing authorities) ; and the judgment may provide also that as security for the payment a lien be imposed upon the separate property of the husband (*Honey* v. *Honey, supra*). ▇ Therefore, since the granting or refusal to grant future maintenance is a matter which lies largely within the discretion of the trial court, before a reviewing court will interfere it must clearly and affirmatively appear upon the face of the entire record that this discretiton has been abused. (1 Cal.Jur., p. 1012.)

Here there is no question as to appellant's ability to pay the award, because the money is on deposit in the joint account; and it is apparent that in view of all the circumstances shown by the entire record it cannot be held as a

matter of law that the granting of the award constitutes an abuse of discretion.

The arguments advanced by appellant and the cases relied upon by him in support thereof would be pertinent if we were here dealing with an award pursuant to section 137 of the Civil Code, which grants power to a trial court to award alimony pendente lite, that is, so-called temporary alimony, or if this were a default divorce case (*Darsie* v. *Darsie*, 49 Cal.App.2d 491 [122 P.2d 64]). But neither of those situations is here presented. *Westphal* v. *Westphal*, 122 Cal.App. 379 [10 P.2d 119], and *Clopton* v. *Clopton*, 161 Cal. 481 [119 P. 651], cited by appellant, were cases involving alimony pendente lite granted pursuant to said section 137, and for that reason they are not in point. In *Willey* v. *Willey*, 51 Cal.App. 124 [196 P. 101], also cited by appellant, it was held merely, so far as we are here interested, that under the allegations and the evidence, the trial court was justified in granting future maintenance pursuant to section 139, despite the fact that the prayer of the complaint was for a specific sum per month "as temporary alimony pending the trial of this action." And assuming, as appellant contends, that under the law as laid down in the case of *Siberell* v. *Siberell*, 214 Cal. 767 [7 P.2d 1003], appellant's half of the money in the joint tenancy account constituted his separate property, the trial court was nevertheless authorized under the legal principles above set forth to impose a lien thereon as security for the payment of the sum awarded respondent.

The judgment entered in the divorce action (appeal No. 12188) is affirmed.

Peters, P. J., and Ward, J., concurred.