[Civ. No. 13441.   First Dist., Div. One.   Dec. 23, 1947.]

CATHERINE TOMPKINS, Respondent, v. ELMER E.
TOMPKINS, Appellant.

Jack Flinn for Appellant.

W. Urie Walsh, Hugo P. Correll and Charles J. Barry for Respondent.

FINLEY, J. pro tem.—This is an action for divorce wherein plaintiff, the wife, complains in two counts. In the first cause of action she alleges extreme cruelty; in the second, desertion. In awarding her judgment from the bench the trial court specified that it was on the ground of defendant's desertion. In its written findings the court found that defendant had been guilty of extreme cruelty toward plaintiff and also that he had deserted and abandoned plaintiff, which desertion had continued for more than one year.

In the conclusions of law and interlocutory judgment neither ground is mentioned. In the conclusions of law appears the statement that "Plaintiff is entitled to a decree of this Court . . . dissolving the bonds of matrimony between Plaintiff and Defendant," and in the interlocutory decree it is ordered, adjudged and decreed "That Plaintiff is entitled to a divorce from Defendant" without specifying the ground. From this interlocutory judgment, which also awarded plaintiff the major portion of the property owned by the parties, alimony in the sum of $75 per month, plus an amount sufficient to enable her to keep up the premiums on two insurance policies on the life of defendant, defendant appeals.

In his opening brief defendant raises five points in support of reversal. Plaintiff has incorporated into her brief a motion to dismiss on the ground that defendant is in contempt of the trial court's order; has filed no stay bond, and for this reason this appeal should not be considered. ■ Failure of an appellant to comply with the judgment appealed from is not a ground for dismissal of the appeal.

No closing brief was filed by defendant. The points upon which he relies will be considered here in the order presented.

The first point is that "there is neither direct evidence nor corroboration sufficient to support the findings that appellant was guilty of extreme cruelty toward respondent; nor was there sufficient evidence or corroboration to support the finding that appellant wrongfully inflicted upon respondent 'grievous physical and mental suffering.' " ■ Defendant argues that nowhere in the testimony of plaintiff is there any evidence of physical abuses, and therefore, the finding of extreme cruelty must have been based solely on mental cruelty. A review of the testimony demonstrates this contention to be a fact, but the law does not confine the term "extreme cruelty" to acts of physical violence or bodily injury. Civil Code, section 94, defines extreme cruelty as "the wrongful infliction of grievious bodily injury, *or grievous mental suffering,* upon the other by one party to the marriage." (Emphasis added.) Since the bodily injury or grievous mental suffering appears in the alternative, it is obvious that either, if proven, would constitute extreme cruelty within the meaning of the statute.

■ Conduct that would induce grievous mental suffering sufficient to constitute extreme cruelty depends upon the circumstances of each particular case, and the finding of a trial

court, based upon any reasonable analysis of the facts and circumstances as reflected by the evidence, will not be disturbed .on appeal. (*La Mar* v. *La Mar,* 30 Cal.2d 898 [186 P.2d 678]; *Barnes* v. *Barnes,* 95 Cal. 171 [30 P. 298, 16 L.R.A. 660]; *Fleming* v. *Fleming,* 95 Cal. 430 [30 P. 566, 29 Am.St.Rep. 124]; *Andrews* v. *Andrews,* 120 Cal. 184 [52 P. 298]; *Keener* v. *Keener,* 18 Cal.2d 445 [116 P.2d 1]; see, also, *Hansen* v. *Hansen,* 86 Cal.App. 744 [261 P. 503], and *McFall* v. *McFall,* 58 Cal.App.2d 208 [136 P.2d 580].)

At the trial of this action defendant gave no testimony pertaining to the grounds of divorce. At the conclusion of plaintiff's case, defendant's counsel stated: "I will call the defendant, but we are not making any contention as to the facts of the divorce. It is only the matter of the property that is in dispute."

This failure did, of course, not relieve plaintiff of the duty of making out her case, for in a divorce action the grounds for divorce, even though admitted, must still be established by competent evidence. (Civ. Code, § 130; *MacDonald* v. *MacDonald,* 155 Cal. 665 [102 P. 927, 25 L.R.A. N.S. 45]; *Avery* v. *Avery,* 148 Cal. 239 [82 P. 967]; *Andrews* v. *Andrews, supra.*)

Plaintiff testified that the defendant "had been staying out nights and not coming in"; that, in the month before the separation she "found he was with another woman"; that he (defendant) said he wanted a divorce and would leave her everything if she would let him have a divorce; that she declined; that he continued "staying out"; that she pleaded with him; that one night in April (1943) he stayed out and she remonstrated with him; that the next day "he went to work and never came back after that, except two weeks later he came home to get his clothes." The plaintiff further testified that she had seen defendant with another woman; that two days after defendant left the home, plaintiff went to the other woman's house at about 6 a. m. and waited outside, and that at 7 a. m. the defendant and the other woman came out of the house and that the latter waved goodbye to the defendant; that the eldest daughter was with her at the time and waited with her. When asked how defendant's conduct affected her, the plaintiff said: "Well, after living with somebody for twenty years, you can imagine." She stated further that she could not sleep or eat and that she lost 30 pounds in weight.

This evidence stands unrefuted. There would be little virtue in discussing its adequacy, for it can be accepted as a matter of judicial knowledge that any concept of the marriage relationship which would sanction such conduct and attribute to the offended party no mental suffering and anguish would be callous, indeed, and quite at variance with commonly accepted standards. We hold this evidence to be substantial and sufficient to constitute extreme cruelty.

Furthermore, it is not necessary that all of the acts of cruelty charged by the aggrieved party be corroborated. Where a number of charges have been made, corroboration of a single act may be sufficient. (*McGann* v. *McGann*, 82 Cal. App.2d 382 [186 P.2d 424]; *Ungemach* v. *Ungemach*, 61 Cal.App.2d 29 [142 P.2d 99]; *Keener* v. *Keener*, *supra*.) Moreover, the rule requiring corroboration is not so strictly applied in contested divorce actions as it is in actions where a decree is sought upon the default of the opposing party. The principal object of the corroboration rule is to prevent collusion between the parties, and where it is clear from the evidence in a contested action that there is no collusion, the court is justified in granting the decree upon evidence which is only slightly corroborated if otherwise the court is satisfied that the prevailing party is entitled to a decree. (*McGann* v. *McGann*, *supra*; *Minnich* v. *Minnich*, 127 Cal.App. 1 [15 P.2d 804]; *Ungemach* v. *Ungemach*, *supra*; *Serns* v. *Serns*, 70 Cal.App.2d 527 [161 P.2d 417].) In the present case the corroborating witness was plaintiff's daughter. She testified that she was with her mother on the occasion when she saw defendant and the other woman come out of the woman's house together at 7 a. m., at which time the latter waved goodbye to defendant. We hold this corroboration to be sufficient.

The second point raised by defendant is that the division of the community property is contrary to law. In the findings of fact, the trial court describes certain property as community property and sets the bulk of the same over to plaintiff. Defendant argues that: "Conceding that plaintiff is entitled to an interlocutory decree on the grounds of defendant's desertion, it therefore becomes incumbent upon the Court to equally divide the community property of the parties. (Civil Code, 146, Subd. (2).)" There is no merit to this contention. Regardless of what the court said and of the minute order made at the time of trial, the formal written

findings signed by the court supersede and control in those cases where such findings are required. (Rules on Appeal, rule 2(b) (2); *Pessarra* v. *Pessarra*, 80 Cal.App.2d 965 [183 P.2d 279]; *Silva* v. *Mercier*, *(Cal.App.) 187 P.2d 60.) ▮ Findings are required in a divorce action. (Civ. Code, § 131; *La Mar* v. *La Mar, supra*.)

▮ The written findings here set forth that defendant is guilty of both extreme cruelty and desertion. The interlocutory decree itself does not mention or specify either ground but this is unnecessary since the conclusions and the judgment are predicated upon the written findings of fact and it must be considered that the judgment rests upon both extreme cruelty and desertion. Where extreme cruelty is a ground, the trial court has the legal right to apportion the community property between the parties in such manner as under the circumstances it deems just. (Civ. Code, § 146, subd. 1; *Tipton* v. *Tipton*, 209 Cal. 443, 444 [288 P. 65]; *Quagelli* v. *Quagelli*, 99 Cal.App. 172, 176 [277 P. 1089]; *Falk* v. *Falk*, 48 Cal.App. 2d 762, 770-772 [120 P.2d 714]; *Crouch* v. *Crouch*, 63 Cal. App.2d 747, 756 [147 P.2d 678].) ▮ In the absence of a showing of an abuse of discretion, which we cannot say has been shown here, the trial court's award of the community property will not be disturbed upon appeal. (*Shapiro* v. *Shapiro*, 127 Cal.App. 20, 27 [14 P.2d 1058].)

▮ Defendant's third. point is that the trial court exceeded its jurisdiction in awarding joint tenancy property to plaintiff as community property. The fact is, however, that even though the real property awarded by the trial court to plaintiff did stand in the names of the parties as joint tenants, the complaint alleges and the answer admits that it is community property. There is no evidence in the record to the contrary. ▮ If the parties so intend, property taken by a husband and wife as joint tenants is community property. (*La Mar* v. *La Mar, supra; Tomaier* v. *Tomaier*, 23 Cal.2d 754, 757 [146 P.2d 905]; *Andrews* v. *Andrews, supra*.) In this connection, it is also to be noted that about $2,000 left to plaintiff by her father was invested by the parties in this property and in the grocery business operated by defendant during the marriage and which was sold on April 7, 1946. ▮ Since defendant in his answer to the complaint ad-

*Hearing in Supreme Court granted.

mits the real property to be community property its treatment as such by the trial court was proper.

The fourth point urged by defendant is that the court erred in ordering him to maintain premium payments on two life insurance policies wherein he is named as the insured and plaintiff as beneficiary. The order made was not that defendant should pay these amounts directly to the insurance companies, but that he should deliver them to plaintiff for the purpose of paying the premiums. Defendant cites *Gelfand* v. *Gelfand,* 136 Cal.App. 448 [29 P.2d 271] for the proposition that upon the dissolution of the marriage relation the insurable interest of the wife on the life of the former husband ''does not exist.'' This does not mean that her rights are absolutely extinguished, for immediately thereafter appears the following language (p. 455) : ''This, however, does not foreclose her right or claim to her interest in any property which may have been used in the payment of premiums, which we think the court is empowered to determine and may cause a defendant to make compensation out of his separate property for the benefit of the wife to the extent that her community right has been invaded. . . .''

The beneficiary, under the policy referred to in the Gelfand case, was not the wife but a third party. If upon divorce a wife is entitled to restitution in the amount of her community interest in premiums paid by her husband on a policy wherein she is not beneficiary, it is only reasonable that a wife should be entitled to protect or salvage her community interest in a policy on the life of her husband wherein she is named as beneficiary and on which the premiums have been paid from community funds. In the case of *Phoenix Mutual L. Ins. Co.* v. *Birkelund,* 29 Cal.2d 352 [175 P.2d 5], the Supreme Court specifically recognizes that the insurable interest of a wife in her husband during the marriage may continue thereafter to the extent at least of enabling her to protect her existing expectancy as beneficiary at the time of divorce where this expectancy had been purchased with community funds.

The trial court in a divorce action has broad powers and wide discretion in settling the property rights of the parties. (*Bowman* v. *Bowman,* 29 Cal.2d 808 [178 P.2d 751] ; *Scheibe* v. *Scheibe,* 57 Cal.App.2d 336 [134 P.2d 835].)

This power is sufficiently extensive to permit an award of alimony within the husband's ability to pay, for the

specific purpose of permitting a wife to protect her interest in the community property. This would encompass the right to protect her expectancy under a life insurance policy wherein her divorced husband is the insured and she is beneficiary, particularly where the policy has an accrued value purchased by premiums paid from community funds during the marriage. (*Phoenix Mutual L. Ins. Co.* v. *Birkelund, supra.*)

██ The final point for consideration concerns the trial court's award of alimony in addition to the insurance premium payments just referred to. This award was in the sum of $75 per month for plaintiff's support and maintenance. Defendant contends that the trial court abused its discretion in making such an award where the evidence discloses that the major portion of the community was awarded to plaintiff; that she will have an income of $40 per month from this property; that she is employed and earns $169 per month; and that defendant is not working and has not worked since the sale of his grocery business in April, 1946.

According to his own testimony, defendant had only about $500 at the time of trial and had no interest in any property or estate other than that considered by the trial court here. Plaintiff admitted that she was employed and that her salary was $169 a month. The fact that she would receive $40 a month as income from the real property awarded by the court was not disputed. Defendant's position is that in the light of this evidence, the order made by the trial court provided alimony payments in excess of plaintiff's needs and defendant's ability to pay.

Plaintiff's reply to this contention is that a guilty party cannot avoid the responsibility for payment of alimony by the simple expedient of avoiding employment, or in other words, refusing to work.

Defendant testified that he was then living in Sonoma and had moved there for his health. He stated that he had bronchial trouble; that San Francisco was "terrible for it"; and that he had been living in Sonoma for about six months. He also stated that he was under a doctor's care until he "moved up the country" but had not been since that time and had only been back to the doctor once. No other showing was made touching upon the state of defendant's health, his inability to secure employment or to transact business. We must therefore hold that an award of general alimony of $75 per month, plus the additional amounts required to pay the

insurance premiums was not an award in excess of defendant's ability to pay were he to make a reasonable effort. (See *Merritt* v. *Merritt*, 220 Cal. 85 [29 P.2d 190].)

There is no testimony in the record directed to plaintiff's need for the alimony award made by the trial court for current living expenses. There was, however, testimony concerning a balance of $5,814 yet remaining due on the family home in San Francisco, awarded by the court to plaintiff. In the case of *Bowman* v. *Bowman, supra,* the Supreme Court held that alimony payments ordered to be made for the purpose of paying off a mortgage on a house and lot originally owned by the husband and wife as joint tenants, but which became the separate property of the wife before divorce by quitclaim from her husband, were proper. In view of this holding, we cannot say that the testimony here was insufficient to support an inference that plaintiff was properly in need of the $75 per month awarded for her support and maintenance which would include safeguarding the real property awarded to her. Such matters rest in the sound discretion of the trial court. (*Scheibe* v. *Scheibe, supra, Miller* v. *Superior Court,* 9 Cal.2d 733 [72 P.2d 868]) and will not be disturbed upon appeal in the absence of a clear showing of an abuse thereof which we hold has not been shown here.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.