[Civ. No. 16564.   Second Dist., Div. Three.   Apr. 26, 1949.]

HARRIET V. FIELDS, Appellant, v. MAGDA MICHAEL, as Executrix, etc., Respondent.

Ernest A. Tolin and George A. Bisbee for Appellant.

Millsap & Schaumer and Joseph D. Taylor for Respondent.

SHINN, P. J.—This is an appeal from a judgment in favor of defendant after an order sustaining a demurrer to plaintiff's complaint without leave to amend.

The complaint set forth the following allegations: Defendant is the duly appointed and acting executrix of the estate of W. C. Fields, who died on December 25, 1946. Plaintiff married decedent in California on April 8, 1900, and was his wife at all times thereafter until his death. At the time of the marriage decedent had no assets or estate of any kind whatsoever, and all of the estate which he acquired subsequent to marriage was from compensation for personal services rendered during marriage together with the increment thereon. Several years subsequent to their marriage, decedent deserted plaintiff. He never discussed his financial affairs with her and wilfully withheld from her all information concerning the extent of his assets and any gifts or transfers made by him out of the community property. Solely from his personal earnings for services rendered during marriage, decedent secretly and without plaintiff's knowledge or consent made extensive transfers of money by way of gifts. Ten separate gifts in stated amounts, made to named individuals are set out, all of which "were illusory and were transferred and set over by said decedent wilfully and fraudulently, secretly and clandestinely, from the community property of plaintiff and said decedent with intent to defraud plaintiff of her interest in her and his estate." The total amount of these gifts was $482,450. Upon information and belief, six additional gifts in unknown amounts to fictitiously named defendants are alleged. The complaint states that "plaintiff has not at any time consented to the making of said gifts or to any one or more of them and said gifts and each of them were made without her knowledge and approval and are all disaffirmed by plaintiff"; and alleges that plaintiff did not learn of any of the gifts until after the death of her husband.

On July 23, 1947, plaintiff duly and regularly filed her "Creditor's Claim and Disaffirmance" with defendant as executrix setting forth substantially the same facts related above and claiming the sum of $241,225 due to plaintiff as her community interest in the unauthorized gifts. The claim was rejected.

This action was thereafter brought against the estate for the reason that "many of said donees are deceased and that those remaining alive reside at divers places, some of them away from the State of California, and that they have used up and dissipated the sums of money by way of gift transferred and set over to them as aforesaid, and would not be able to pay a judgment, if one were rendered against them for return to plaintiff of said gifts or of some part thereof. Plaintiff is without any means of collecting in full from said donees those portions of said gifts which she is entitled to." It is also alleged that defendant executrix has possession and control of the financial records and papers of decedent; that she has refused to permit plaintiff to inspect them; and that these records disclose to a large extent detailed information concerning the alleged gifts of money as to which plaintiff is without information. The prayer for relief was twofold: (1) "By reason of plaintiff's disaffirmance of the gifts hereinbefore described, that defendant pay the plaintiff the sum of $241,225.00." (2) An accounting be had to determine the amount of any additional gifts made by decedent from community funds, and upon such accounting judgment be rendered for plaintiff to the extent of her interest therein.

Defendant's demurrer set forth some seven grounds upon which it was claimed the complaint was insufficient. The written opinion of the trial judge, which this court is entitled to consider on appeal (see *Union Sugar Co.* v. *Hollister Estate Co.*, 3 Cal.2d 740, 750 [47 P.2d 273], and cases cited; *cf.*, Rules on Appeal, rule 5a) and which is set forth in full in respondent's brief, discloses that the sole ground upon which the demurrer was sustained was that the complaint did not state a cause of action maintainable against defendant as executrix of the estate of W. C. Fields. The paramount is-- presented is whether plaintiff may proceed directly agaiเ the estate of her husband to secure relief from his dissipatiเ of the community funds through secret and unauthorizeเ *inter vivos* gifts, or must seek recourse solely against th donees.

Section 574 of the Probate Code provides that "any person, or the personal representative of any person, may maintain an action against the executor or administrator of any testator or intestate who in his lifetime has wasted, destroyed, taken, or carried away, or converted to his own use, the property of any such person. . . ."

The facts alleged in the complaint are in our opinion sufficient to bring the action within these provisions. Even before the husband was forbidden by statute to make a gift of community property without his wife's consent, his power of disposition had never been deemed to include the privilege of acting in fraud of the rights of the wife in the community property. (*Smith* v. *Smith*, 12 Cal. 216, 225 [73 Am.Dec. 533]; *Lord* v. *Hough*, 43 Cal. 581, 585.) Where actual fraud is alleged, as it is here, it would seem clear that a husband who has made unauthorized gifts of a large share of the community property may be held accountable to the offended wife as in the case of any other person who has wrongfully disposed of the property of another.

The position of the husband, in whom the management and control of the entire community estate is vested by statute (Civ. Code, §§ 161a, 172, 172a), has been frequently analogized to that of a partner, agent, or fiduciary. (*Estate of McNutt*, 36 Cal.App.2d 542, 552 [98 P.2d 253]; *Grolemund* v. *Cafferata*, 17 Cal.2d 679, 684 [111 P.2d 641]; *Lynam* v. *Vorwerk*, 13 Cal.App. 507, 509 [110 P. 355]; 1 de Funiak, Principles of Community Property, § 95, p. 263.) ▇ Section 2219 of the Civil Code provides: "Everyone who voluntarily assumes a relation of personal confidence with another is deemed a trustee . . . as to the person who reposes such confidence. . . ." It is clear that, being a party to the confidential relationship of marriage, the husband must, for some purposes at least, be deemed a trustee for his wife in respect to their common property. (*Cf.*, *Vanasek* v. *Pokorny*, 73 Cal. App. 312, 320 [238 P. 798]; *Arnold* v. *Leonard*, 114 Tex. 535 [273 S.W. 799, 804].) Fundamental principles governing trust relationships are set forth in sections 2228 and 2229 of the Civil Code: "In all matters connected with his trust, a trustee is bound to act in the highest good faith toward his beneficiary, and may not obtain any advantage therein over the latter by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind. A trustee may not use or deal with the trust property for his own profit, or for

any other purpose unconnected with the trust, in any manner.'' Section 2234 declares: ''Every violation of the provisions of the preceding sections of this article [i. e. §§ 2228-2233] is a fraud against the beneficiary of a trust.'' ▮ Disregarding the allegations of intent to defraud, it is abundantly clear from those remaining that Fields must be held to have consummated a fraud against plaintiff. Nine years prior to their marriage, section 172 of the Civil Code was amended to provide that the husband could not make a gift of community property without the written consent of his wife. (Stats. 1891, p. 425.) ▮ Fields' disregard of this affirmative duty imposed upon him as manager of the community estate was a violation of his fiduciary obligations as defined in sections 2228 and 2229 of the Civil Code, *supra*. Even if good faith were to be shown, he would nevertheless be subject to personal liability for disposing of trust property in an unauthorized manner. (Civ. Code, § 2238.)

▮ It is well settled, of course, that a gift made in violation of section 172 is, as against the donee, voidable by the wife in its entirety during the husband's lifetime (*Matthews* v. *Hamburger,* 36 Cal.App.2d 182 |97 P.2d 465] ; *Lynn* v. *Herman,* 72 Cal.App.2d 614 [165 P.2d 54]), and to the extent of one-half after his death (*Trimble* v. *Trimble,* 219 Cal. 340 [26 P.2d 477] ; *Ballinger* v. *Ballinger,* 9 Cal.2d 330 [70 P.2d 629]). The beneficiary of a trust, however, is not required to pursue the trust property, but may elect to hold the trustee (or after his death, his estate) personally liable (*McElroy* v. *McElroy,* 32 Cal.2d 828, 831 [198 P.2d 683] ; *Lathrop* v. *Bampton,* 31 Cal. 17, 23 [89 Am.Dec. 141]) ; and the latter may not escape such liability by showing that the trust property has been dissipated. (54 Am.Jur. § 253, p. 196.) Manifestly, a wife whose community property rights have been violated, as plaintiff alleges hers have been, is entitled to pursue whatever course is best calculated to give her effective relief. Where the amount of the gifts and identity of the donees are known, and the property can be readily reached, the former remedy may be decidedly more advantageous to the plaintiff than an action against the husband's estate, since the assets of the latter may be insufficient to satisfy a judgment. On the other hand, where recourse against the donees would be ineffective to give relief, as in the present instance, a denial of the alternative remedy would not only be in disregard of rudimentary principles applicable to persons acting in a fiduciary capacity, insofar as the husband stood in that

relation, but would also amount to a concession that the law is powerless to accord to the wife's community interest the full protection which section 172 was evidently designed to ensure. We think the law is not so toothless. ■ Whether the action is viewed as one based upon actual fraud, or as one based upon a violation of a statutory limitation upon the husband's power of control and management, is immaterial, for the dissipation of community assets by means of unauthorized gifts is in either view a conversion of the "property" of the wife such as would subject the husband's estate to suit under section 574 of the Probate Code. The statutory language is sufficiently comprehensive to include any wrongful conduct resulting in a loss of "property" to another.

■ It cannot be successfully contended that the assets given away were not, at least to the extent of one-half, "property" of the wife. Even prior to the enactment in 1927 of section 161a of the Civil Code, which defined the interests of the husband and wife in community property as "present, existing and equal," it was well recognized that the "mere expectancy" which the wife had was a considerably more definite and personal interest than that of an ordinary heir. (*Stewart* v. *Stewart*, 199 Cal. 318, 342 [249 P. 197]; *Riley* v. *Gordon*, 137 Cal.App. 311 [30 P.2d 617]; *Siberell* v. *Siberell*, 214 Cal. 767 [7 P.2d 1003].) Although not amounting to a vested interest, her property rights were so far recognized that equitable relief was available where necessary to safeguard against threatened wrongful dispositions of community assets by the husband. (See *Mahl* v. *E. A. Portal Co., Inc.*, 81 Cal.App. 494, 497-498 [254 P. 278]; *Greiner* v. *Greiner*, 58 Cal. 115, 121.) The extent to which the wife's interest may have been enlarged by section 161a need not be inquired into here (see Simmons, *Interest of Wife in Community Property*, 22 Cal.L.Rev. 404; 3 Cal.Jur. 10-Yr.Supp. § 90, p. 597), for we think the plaintiff's right to relief extends to gifts out of community assets acquired prior to its enactment, and hence, *a fortiori*, out of assets acquired subsequent thereto. As this court said in the case of *Franklin* v. *Franklin*, 67 Cal. App.2d 717, 725 [155 P.2d 637], "the word 'property' may be properly used to signify any valuable right or interest protected by law . . . [b]ut the meaning to be given to the word depends upon the sense in which it is used, as gathered from the context and the nature of the things which it was intended to refer to and include." In construing section 574,

the Supreme Court has said that "wherever a plaintiff has sustained an injury to his 'estate,' whether in being or expectant, as distinguished from an injury to his person, such injury is an injury to 'property' within the meaning of that word in the present statute." (*Hunt* v. *Authier*, 28 Cal.2d 288, 296 [169 P.2d 913, 171 A.L.R. 1379].) Although the court in that case was divided on another point, our conclusion that the wife's property was injured, within the meaning of section 574, by the gratuitous transfer of tangible community assets without her knowledge or consent, is fully consistent with the views expressed in both the majority and minority opinions. It also finds support in *Vragnizan* v. *Savings Union etc. Co.*, 31 Cal.App. 709, 713 [161 P. 507], where a divorced wife's action, arising out of the fraudulent concealment of assets by her former husband in reaching a property settlement agreement, was held to be an injury to the wife's property which survived the husband's death.

Upon the basis of a suggestion by way of dictum in *Hunt* v. *Authier*, *supra*, that section 574 "assumes, for the purpose of its effective operation, the existence of a cause of action against the tort feasor during his lifetime on behalf of any person authorized by law then to sue him," it is contended that plaintiff may not maintain her suit since no cause of action existed in her as against Fields during his lifetime. Whether the wording of the section justifies such an assumption as a necessary limitation upon its meaning in the absence of express language similar to that contained in its companion section 573, need not be decided here, for we think that a cause of action in favor of plaintiff did exist prior to Fields' death. Because of his fraudulent concealment of the facts concerning his administration of the community estate, she did not know that such a cause of action existed, and accordingly is not barred by the statute of limitations (*Pashley* v. *Pacific Elec. Ry. Co.*, 25 Cal.2d 226 [153 P.2d 325]); but a cause of action nevertheless arose at the time when plaintiff's primary rights were invaded by Fields' wrongful disposition of her property. (See *Wulfjen* v. *Dolton*, 24 Cal.2d 891, 895-896 [151 P.2d 846], citing Pomeroy, Code Remedies (5th ed.), § 251, p. 536.) As noted in the last cited case, the cause of action "may entitle the injured party to many forms of relief, and the relief is not to be confounded with the cause of action, one not being determinative of the other."

Accordingly, we need not consider what type of action plaintiff might have prosecuted, or whether she could have

maintained any action against the husband during the existence of the marriage which would not have for one of its purposes a division of the community property, such as an action for separate maintenance. The question is not whether plaintiff, during the existence of the marriage, could have prosecuted her cause of action against Fields and have obtained the relief which she now seeks against his estate. It is sufficient that he was guilty of wrongful acts for which she was entitled to redress. If she could not then have maintained an action against him for the value of her interest in the property which he had given away, it would have been due to the policy of the law to forbid vexatious and unnecessary litigation between spouses, and also upon the ground that during the existence of the marriage the husband has the control and management of the community property of which he cannot be divested except through procedure authorized by statute. A wife is not so restricted if she sues for separate maintenance; nor has it ever been questioned that in an action for divorce, or thereafter, she may seek enforcement of all her community property rights. (See *Gelfand* v. *Gelfand,* 136 Cal.App. 448 [29 P.2d 271]; *Crossan* v. *Crossan,* 35 Cal.App.2d 39 [94 P.2d 609]; *Stewart* v. *Stewart,* 204 Cal. 546, 555 [269 P. 439]; *Dunn* v. *Mullan,* 211 Cal. 583, 590 [296 P. 604]; *Provost* v. *Provost,* 102 Cal. 775 [283 P. 842]; *Wheeland* v. *Rodgers,* 20 Cal.2d 218, 222 [124 P.2d 816]; *Falk* v. *Falk,* 48 Cal.App. 2d 762, 768 [120 P.2d 714].) Many of the cited cases involved reimbursement to the wife where community funds had been expended in the improvement of the separate property of the husband. The reasons supporting reimbursement to the wife in such situations clearly support plaintiff's right to redress upon the facts pleaded in her complaint. (*Cf., Vragnizan* v. *Savings Union etc. Co.,* 31 Cal.App. 709, 713 [161 P. 507].) There is, as far as we know, no recorded precedent for the maintenance of an action exactly like the present one, although, as we say, it is not distinguishable in principle from other actions based upon constructive frauds committed by the husband. Rights such as plaintiff asserts have invariably been respected and proper redress has been given. The instant case does not differ in substance, but only in the form of relief sought. It is not all important that the present action in that respect is novel. As said by Chief Justice Bleckley in *Fouché* v. *Harison,* 78 Ga. 359 [3 S.E. 330, 334]: "That no direct authority upon it had been produced must

be due alone to the fact that legal evolution had not progressed far enough to develop a needless precedent for a necessary conclusion.'' We conclude that plaintiff was authorized by section 574 of the Probate Code to maintain the present action.

Defendant places much reliance upon the fact that the complaint does not contain an allegation that plaintiff disaffirmed the gifts during her husband's lifetime. Her contention is that the gifts were valid until they were disaffirmed by plaintiff, and as they were not disaffirmed plaintiff had no cause of action for the recovery of the property. This appears to have been the theory upon which the demurrer was sustained. We think it is without merit. Disaffirmance was no part of the right to avoid the gifts. The right to avoid them had to be complete before plaintiff could have exercised her right of election to disaffirm them. Otherwise, repudiation of her husband's actions would have meant nothing. Disaffirmance would have only been one step in a procedure for enforcing the right.

No question was raised either here or in the trial court as to whether plaintiff should have proceeded in the probate court to claim as her share of the community property an amount equal to one-half of all sums previously given away without her consent, in addition to her share in the assets presently remaining in the estate. (See McKay, Community Property (2d ed.) §§ 734, 735, p. 494; 1 de Funiak, *ibid.*, § 232, p. 600.) We have nevertheless considered the question of jurisdiction and think it is clear that the present action, being one on a rejected claim based upon a personal liability arising out of the breach of a fiduciary duty, is within the general jurisdiction of the superior court. (11A Cal.Jur. §§ 500, 600, pp. 706, 842; Prob. Code, § 714.)

The sole question we decide is that the complaint states a cause of action for compensatory relief. If plaintiff should prevail it will be for the trial court to decide the form the judgment should take and for the court in probate to give proper effect to it in exercising its jurisdiction with relation to claims to the community property.

The judgment is reversed with directions to overrule the demurrer and permit defendant to answer.

Wood, J., and Vallée, J., concurred.

A petition for a rehearing was denied May 19, 1949, and respondent's petition for a hearing by the Supreme Court was denied June 23, 1949.