[Civ. No. 4570.   Fourth Dist.   July 22, 1953.]

JANE ESTHER ABRAMS, Respondent, v. HAROLD
NEWTON ABRAMS, Appellant.

Clarence Harden and Gray, Cary, Ames & Frye for Appellant.

Hunter M. Muir and Henry F. Walker for Respondent.

GRIFFIN, J.—This is an action for divorce on the grounds of extreme cruelty. The parties were married May 5, 1939, and have three minor children. Their property rights are not here involved. After trial, the court granted plaintiff a divorce and awarded her custody of the children. No question is raised as to the propriety of the custody order.

It is defendant's principal contention that there was no sufficient case of extreme cruelty resulting in grievous mental suffering established, as found by the court, or if there was, there was no sufficient corroboration thereof. It is his argument that the acts complained of were "sins of omission" rather than of "commission."

Defendant, aged about 48 years, is and has been, during his married life, a successful architect, practicing his profession in La Jolla, California. His net income gradually increased from $1,600 per year in 1939, to $23,000 in 1948. Defendant's worth at the time of trial was in excess of $57,000. He belonged to a beach club, a country club, and two golf clubs. He played golf two or three times a week and engaged in the social activities of each. Periodically, he became drunk and stayed away from home all night. Plaintiff's complaint is that defendant failed, with few exceptions, to take her or the children to these clubs, or to allow her to partake of club activities and of their social life. She testified that on one occasion when he took her he seated her at a table alone, left her, and she was compelled to be entertained by people she did not know; that during her married life she was required to stay at home and care for the children; that when they were first married (plaintiff having been defendant's secretary and about 23 years of age) she was compelled to live in an old made-over and makeshift garage and house without adequate furnishings and heat; that both plaintiff and the children suffered from colds and ill-health because of defendant's unwillingness to better house them when he had the means so to do. She testified that they finally moved from the garage into an unfinished house (two old buildings put together) which was also cold and disagreeable and in-

adequately furnished; that as a result of this, plaintiff had the "flu" two times and two of the children had pneumonia; that when she remonstrated with defendant about these conditions he became cross and angry; that he compelled her to do the gardening; that the doctor ordered them to live some place else; that defendant finally took plaintiff and the children out in the country to Poway, rented an old house for them far from any neighbors, and that plaintiff became quite frightened to live there; that soon thereafter, instead of commuting daily to his office in La Jolla, defendant obtained a room in a hotel in which to live and did not return to plaintiff's home in the country; that this continued sometimes for a week at a time; that she wanted to move back to the city but he insisted that she remain in the country because of the possibility of a depression, that in that event she could have a livelihood from their rabbitry which defendant started and which plaintiff was compelled to operate; that during the last year defendant did not come to see plaintiff or the children more than twice a month, and then only on week-ends; that defendant would sleep in the bedroom and plaintiff would be compelled to sleep on the couch in the living room; that defendant would take his whiskey to his room and do considerable drinking and then become cross, swear at her, and would pound on the walls and frighten plaintiff and the children; that he would insist that plaintiff act as his nurse and carry food in trays to his bed; that the court later allowed him to use a room in the attic and he locked plaintiff out of the house and said if she entered he would prosecute her; that he put up signs on the door to this effect; that he spent very little time with his children and treated them with indifference; that he never wanted children in the first place and asked plaintiff before they were born to try and get rid of them; that she was a religious woman and her husband tried to keep her from going to church because he did not believe in it and said it was bad for the children to go to Sunday School; that defendant did not want her to have any friends come to the house or to have any other children play with their children; that he would not allow her to become an officer in the P.T.A. or to take any part in the church doings; that he showed no affection to her nor to the children during their married life. This is a brief résumé of some of the acts complained of. It is plaintiff's contention that this course of conduct continued through the years of their married life, and the infliction on

her of these acts constituted extreme mental cruelty and the trial court so found.

Section 94 of the Civil Code neither sharply defines nor definitely limits the phrase "extreme cruelty," but merely describes it in general terms, leaving a wide range of discretion with the trial court. There is no well-defined rule that may be followed as a test in determining the question as to whether or not certain acts or conduct constitutes extreme cruelty. Each case must be determined according to its own particular circumstances, by the good sense and judgment of the court, keeping always in view the intelligence, apparent refinement and delicacy of sentiment of the complaining party. (*Fleming* v. *Fleming*, 95 Cal. 430 [30 P. 566, 29 Am.St.Rep. 124]; *Scheibe* v. *Scheibe*, 57 Cal.App.2d 336 [134 P.2d 835]; *McFall* v. *McFall*, 58 Cal.App.2d 208 [136 P.2d 580]; *Shaw* v. *Shaw*, 122 Cal.App. 172 [9 P.2d 876].) We conclude that the finding of the trial court is supported by the evidence.

Some question does arise as to corroboration of the many acts about which plaintiff complains. However, the rule is that all of the acts of cruelty charged need not be corroborated. Corroboration of a single act may be sufficient. (*McGann* v. *McGann*, 82 Cal.App.2d 382 [186 P.2d 424].)

As to defendant's ability to provide better living conditions and entertainment for plaintiff and her children, the evidence is not in conflict. Defendant offered in evidence a statement of his net income for the years indicated, and this fact is corroborated. The minister of plaintiff's church testified he called at plaintiff's home to encourage church attendance. He stated that from his observation their home was not furnished comfortably nor properly for the raising of children. This fact was corroborated by a neighbor in Poway, who called on them. She testified she was not allowed to have her child run or play with plaintiff's children because it would disturb defendant; that she was president of the P.T.A. and when she called plaintiff to attend the meetings plaintiff could not come to them. Other neighbors testified they visited her home and plaintiff's children were required to remain quiet all the time because of fear of disturbing defendant; that they noticed that plaintiff was "upset" and nervous a good deal of the time; that defendant spent many nights away from home and plaintiff was worried about him. One witness testified plaintiff's aunt called him about 7:30 a.m. one morning inquiring about defendant's not coming home the night before and that she informed him that plaintiff was worried and upset

about the matter; that he informed plaintiff's aunt that there had been a stag party at the club and defendant left about 11 p.m. and said he had driven into the country and it turned so foggy he stopped and stayed there all night. The manager of one of the clubs testified he knew both plaintiff and defendant; that defendant did not bring plaintiff with him to the club, but he knew that on occasions defendant would stay in the evenings, have dinner with the men and would be seen in the gaming rooms, doing more talking than playing; and that defendant played golf on an average of twice a week. Defendant, as a witness, gave a somewhat different version of their matrimonial life, and gave his claimed reasons why he remained away from plaintiff's home on so many occasions.

In *Wilson* v. *Wilson*, 124 Cal.App. 655 [13 P.2d 376], it was stated that where it is clear that there is no collusion and the defendant's testimony, though conflicting with that of the plaintiff in many of its details, in the more important matters was corroborative of the plaintiff's testimony, which was also corroborated in certain respects by other testimony, the corroboration is sufficient.

We conclude that there was sufficient corroboration of plaintiff's testimony as to certain particulars complained of which would justify the court in granting the decree. (*Tompkins* v. *Tompkins*, 83 Cal.App.2d 71, 76 [187 P.2d 840]; *McGann* v. *McGann, supra*; *Hellman* v. *Hellman*, 108 Cal. App.2d 588, 590 [239 P.2d 458].)

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.