[Civ. No. 14083.  Second Dist., Div. Three.  Jan. 24, 1944.]

CHARLES MURRAY TRUAX, Respondent, v. MARY CE-
CELIA TRUAX, Appellant.

Samuel Mirman for Appellant.

Mildred Gilmore for Respondent.

SHAW, J. pro tem.—Defendant appeals from an interlocutory judgment of divorce in plaintiff's favor. In his amended complaint plaintiff set up two grounds for divorce: first, desertion, and second, extreme cruelty. Defendant answered and filed a cross-complaint which plaintiff answered. There were no findings, nor was there any recital in the decree of the facts found to be true. We pass this point, as appellant does, to consider the sufficiency of plaintiff's evidence to justify a divorce. At the trial no evidence at all in support of the allegations of desertion was produced, so the judgment cannot be upheld on that ground. Some effort was made to prove extreme cruelty, but after examination of the evidence we conclude that it is insufficient to warrant the granting of a divorce on that ground.

The amended complaint alleges as to that ground that the defendant inflicted on the plaintiff "grevious mental suffering," and then specifies several particulars, the only ones to which any proof was directed being: "That almost immediately after the marriage of plaintiff and defendant, defendant would indulge in severe fits of temper and outbursts of jealousy. That she would become so violent towards plaintiff that he became afraid of rendering the smallest social courtesy to their mutual friends and acquaintances. That the defendant on various occasions would become so enraged she would dig her nails into the palms of her hands until she would bring blood, and would berate and abuse plaintiff and accuse him of improper acts and conduct towards all of their female friends and acquaintances . . . That in the year 1922, the exact month and date not now being remembered by plaintiff, and after plaintiff and defendant had retired for the night, the defendant produced from under her pillow a large kitchen carving knife and stated, 'I'm going to kill you.' "

At the time this action was filed, the parties had been married twenty-six years and separated a little over twelve years. They had two children, who were adults when the action was begun. The plaintiff was in the Navy during much of their life together, and was consequently away from home much of the time.

In an effort to establish his cause of action for cruelty, plaintiff produced his own testimony and that of one corroborating witness, his sister, Mrs. Patton. Plaintiff gave this testimony: "Q. This course of conduct set forth in your complaint, of your wife's cruelty, upset you, made you nervous and ill, didn't it? A. That is true. . . . Q. You have alleged in your complaint that your wife did certain things which made you nervous and ill. What were those things? A. She was extremely jealous and demonstrated it in many ways, even threatening on one occasion to kill me. Q. When was that? A. The date is more or less obscure. Q. I mean the year? A. I wouldn't even say the year right now. But it actually did happen, and I swore to the fact it did happen. Q. Did you take it seriously? A. I did not, for I went to sleep. Q. What do you mean by her being jealous; what did she do? A. She objected to my even conversing with anyone of the opposite sex, no matter what their age might be. More so if I danced with them." Mrs. Patton, the corroborating witness, after testifying that she knew both parties and had visited in their home for several weeks and had received numerous letters from defendant, proceeded: "Q. By THE COURT: You know, during their course of married life, that she sort of upset Mr. Truax? A. Yes. Q. Made him nervous and ill? A. Very true. Q. You witnessed these matters? A. Yes . . . Q. What were these acts that caused the plaintiff mental anguish? A. Well, I would say that, while I never saw them really disagree, still I felt she was very resentful and that she would sulk. Q. Did she say anything in your presence? A. No, I don't recall that, but there were slight disagreements that we could see that she would not talk and had a very resentful attitude which I could see would react——."

Section 94 of the Civil Code defines extreme cruelty as "the wrongful infliction of grievous bodily injury, or grievous mental suffering, upon the other by one party to the marriage." ▮ To constitute the sort of extreme cruelty in-

volving no bodily injury there must be grievous mental suffering by the injured party, resulting from the conduct of the other party. ■ The threat to kill, testified to by plaintiff, did not have this effect, for he said he did not take it seriously, but went to sleep. ■ The other matters complained of, the defendant's exhibitions of jealousy, upset him and made him nervous and ill, he said, in response to a very leading question. The nature and extent of this nervousness and illness were not stated. This hardly rises to the level of "grievous mental suffering." ■ The defendant's objections to his conduct with the opposite sex were not without foundation, according to his own testimony. He admitted that in 1923 he quite often danced with another woman who was named to him and occasionally took her home from dances, that in 1929 he was demoted by reason of relations with still another woman, and that at some time not stated he had committed adultery with a third woman. All of these actions were known to defendant. It does not lie in the mouth of a husband who so conducts himself to claim that his wife's quite natural objections to such conduct have inflicted grievous mental anguish on him. (See *Annen* v. *Annen* (1926), 79 Cal.App. 626, 628 [250 P. 580].)

■ The corroborating testimony is even weaker than that of plaintiff. It does not appear to relate to the conduct to which plaintiff testified. The witness, Mrs. Patton, "never saw them really disagree" but "could see that she would not talk and had a very resentful attitude." Her statements, in response to leading questions, that defendant "sort of upset" plaintiff and made him nervous and ill seem to be mere conclusions. As already stated, the "resentful attitude" was justified. This testimony is not sufficient to establish or corroborate the charge of cruelty. Mrs. Patton also produced several letters written to her by the defendant, and it is claimed that these letters prove or corroborate the charge. They do contain complaints of plaintiff's conduct with various women, as to whom, on the stand, he denied the misconduct. But it does not appear that these letters were ever read by or made known to plaintiff. They cannot, therefore, have caused him any mental suffering. Being mere admissions or statements of defendant, they cannot be used as corroboration of plaintiff's testimony. (Civil Code, sec. 130.)

The judgment is reversed.

Desmond, P. J., and Shinn, J., concurred.