[Civ. No. 3591. Fourth Dist. Nov. 12, 1947.]

FRANK RICHARD NEGLEY, Respondent, v. ZINA ELIZA NEGLEY, Appellant.

Claude L. Rowe for Appellant.

No appearance for Respondent.

MARKS, J.—This is an appeal from an interlocutory judgment of divorce in favor of plaintiff which divided the community property and awarded the custody of the two minor children to plaintiff.

Plaintiff has filed no brief here. He has filed an affidavit stating that he is without funds to employ an attorney, as well as to have a brief printed. He consented to the submission of the case but challenged generally the statement of facts in defendant's brief.

Plaintiff filed his complaint alleging cruelty that had caused him grievous mental suffering. Defendant's cross-complaint contained like allegations in asking for a divorce and custody of the children.

Defendant urges that there was no sufficient evidence of cruelty and none of grievous mental suffering to support the judgment in favor of plaintiff and that it was a breach of discretion to award plaintiff the custody of Betty May Negley, a daughter, 16 years old, and Donald Richard Negley, a son, 11 years old.

The divorce action was tried very briefly on February 20, 1947, with the result already indicated, except that the custody of the daughter was then given to defendant. Findings of fact were waived.

On March 13, 1947, and before entry of the interlocutory decree, defendant, with another attorney, moved to reopen the case to take further evidence on the question of the custody of the children. The trial court granted the motion with the order that ''The matter then will be reopened upon stipulation of counsel on the issue of custody of the children only.''

The evidence on the question of the cruel treatment of plaintiff by defendant is very brief. Plaintiff testified in his own behalf on this question as follows:

''Q. Now you allege in your complaint that during the time you were living with your wife that her conduct toward you caused you to suffer mentally and physically. Will you tell the court what the trouble was? A. In the first place, just church all the time, continually. It was coming to—just before I left it was every night. And she would insist on the children going just as regularly as she did, and myself, too. She wouldn't go anywhere with me; wouldn't go to a show, anyplace I asked her to go. And I couldn't smoke in my own house; couldn't have an ashtray in my own house. The neighbors there brought one so I would have one in the house. And just picking at me and nagging at me all the time. No matter who I worked with, who I went with, whatever it was, whatever. It was just on my mind all the time;

just continually crabbing about one thing and another. If I would come home maybe she would be crying, and come to find out she had had an argument with the neighbors about religion. And that was the way it was. Not just for a short time. It has been over a period of our married life."

Plaintiff's mother was called as a corroborating witness. She testified as follows:

"A. I don't like it. My daughter and I have never had words. But we have talked over many times her not going with my son where he wants to go. It wouldn't make any difference. Once in a while she would go, but it was always too dirty or something like that, and the children of the family, she picked on them. Particularly Betty May, when she comes home. And that is the reason that all led up to this. And now lately Mrs. Negley is gone very much on religion. It has made her extremely nervous, extremely so, because it is a church where they get up and cry and just go on, like Holy Rollers, and on that order. Still it was all right. I enjoyed it until they got like that. And we have talked over many times, and I told her I wouldn't go any more. She is morally a good woman."

This is all of the evidence offered by plaintiff on the question of his right to a divorce. The corroboration is extremely meager, to say the least.

Defendant testified that plaintiff became infatuated with another woman and contracted a social disease; that this made her unhappy and nervous.

The daughter was called to corroborate her mother. She testified as follows:

"Q. Was there unhappiness in this home before the separation? A. Yes. Q. And just generally did your mother appear to be upset and nervous? A. Yes. Q. And did these controversies with your father about various things—have you ever seen your mother crying and indicating a nervous breakdown? A. Yes. Q. And who do you blame for those problems? A. Well, it is sort of both of them."

This is all of the evidence in the record of the trial of the divorce action bearing on the question of cruelty. It is true that on the second hearing neighbors testified that plaintiff told them that he had a social disease, but under the stipulation of counsel and the court order we assume that this was admitted on the question of the fitness of plaintiff to have

the custody of his children. At least the trial judge announced several times that all testimony then taken was limited to the question of custody.

As applicable here, extreme cruelty as a ground for divorce "is the wrongful infliction of . . . grievous mental suffering upon the other by one party to the marriage." (Civ. Code, § 94.)

 It is well established that where the wrong complained of by the injured spouse is grievous mental suffering with no claim of bodily injury, the grievous mental suffering is the ultimate fact which alone will entitle a party to a divorce and unless such mental suffering is established as a result of the acts of the other party, a judgment awarding a divorce cannot be sustained. (*Ritter* v. *Ritter*, 103 Cal. App. 583 [284 P. 950].) As said in *Hunsberger* v. *Hunsberger*, 99 Cal.App. 130 [277 P. 1092]:

". . . it is patent that the trial court was exercising a sound discretion in refusing to base a decree of divorce on any one or all of the acts alleged. There is not a particle of evidence in the record to show that the defendant inflicted any bodily injury on the plaintiff nor that any one or all of her acts produced any grievous mental suffering on the part of the plaintiff. For all of these reasons the trial court did not err in holding that the plaintiff had not proved a cause of action as for extreme cruelty. (*Barnes* v. *Barnes*, 95 Cal. 171, 176 [16 L.R.A. 660, 30 P. 298].) " (See, also, *Truax* v *Truax*, 62 Cal.App. 2d 441 [145 P. 2d 88]; *Nason* v *Nason*, 48 Cal. App.2d 500 [120 P.2d 37].

 It is also the rule that where the acts complained of "were such as to inevitably cause grievous mental suffering," a trial judge is justified in drawing the inference of such suffering from those acts. (*Bush* v. *Bush*, 72 Cal.App.2d 487 [164 P.2d 774]; *Maloof* v. *Maloof*, 175 Cal. 571 [166 P. 330].)

 In the instant case, there being no claim of bodily injury, the conduct complained of by plaintiff was not of such a nature as to compel the inference of grievous mental suffering, so there should have been proof showing such grievous mental suffering to support the decree, and there is none in the record.

 We have carefully read all of the record and conclude that there was no breach of discretion in awarding custody of the two children to plaintiff. The daughter was over 16 years

of age and was self-supporting. She could not get along with her mother. At the time of the last hearing she was living at the Y. W. C. A. Several witnesses testified that it was a good place for her to live and provided proper care for and supervision over her. She desired to continue living there and her father proposed to let her do so under his guidance and direction. Donald was provided a reasonably good home with his father and wished to remain in his custody.

As the judgment of divorce must be reversed, and as the whole judgment is before us for review, we believe it should be reversed as a whole so that the best interests of the children may be considered and protected under the circumstances appearing at the second trial.

The judgment is reversed.

Barnard, P. J., and Griffin, J., concurred.