[Civ. No. 3907.   Fourth Dist.   Sept. 14, 1948.]

REBECCA H. CAIRO, Respondent, v. RALPH H. CAIRO, Appellant.

Edwin M. Campbell for Appellant.

Robert W. Conyers and Davies, Burch & Conyers for Respondent.

GRIFFIN, Acting P. J.—Plaintiff brought this action against defendant for a divorce on the grounds of extreme cruelty. The parties were married in Mexico in 1930, and separated in 1947. There were no children.

The complaint alleges the "community property" to be "an automobile, house and lot and miscellaneous household furniture and furnishings." Divorce and equitable division of the community property is sought.

Defendant answered and denied the general allegations as to cruelty but failed to deny the allegations as to the community property above mentioned.

The court granted the divorce and found that the "community property of the parties consists of a house and lot held in the names of plaintiff and defendant as joint tenants, though actually the community property of the parties . . . household furnishings and furniture and a 1946 Plymouth automobile." It awarded all of the property to the plaintiff save the automobile.

Defendant and appellant now argues first that the finding of extreme cruelty and grievous mental suffering is not supported by the evidence, citing such cases as *Negley* v. *Negley*, 82 Cal.App.2d 355 [186 P.2d 151], and *Truax* v. *Truax*, 62 Cal.App.2d 441 [145 P.2d 88], wherein the rule is stated to be that where the wrong complained of by the injured spouse is grievous mental suffering with no claim of bodily injury, the grievous mental suffering is the ultimate fact which alone will entitle the party to a divorce, and unless such mental suffering is established as a result of the acts of the other party, a judgment awarding a divorce cannot be sustained. Secondly, that plaintiff's testimony is not sufficiently corroborated, cit-

ing *Gleason* v. *Gleason*, 13 Cal.App.2d 231 [56 P.2d 973], holding in effect that there must be corroboration as to "at least a considerable number of important and material facts."

In the opening statement to the trial judge, counsel for plaintiff announced: "This is a divorce action. I think the chief contest will be over the distribution of the community property which consists of a home which is not paid for, there being $2300 owing on it, and an automobile worth perhaps $1500 or some $2,000 . . . and the question of whether or not the plaintiff is entitled to support."

At the trial Mrs. Cairo testified generally as to her husband's conduct that: "Well, he has—he told me he was in love with another woman and still in love with her and living with her. They live down in Tijuana. He buy furniture and he bought car for her and he buy the furniture for her"; that this was going on for about a year or two; that "He was awful mean to me all the time. Maybe that is why, because he was in love with that woman. He tried to make me tire and nervous, too"; that he mortgaged their car and bought furniture for the other woman; that when her husband went to see the other woman a few months ago he left a note to her written in Spanish. This note, admittedly signed by the defendant, was received in evidence and, as interpreted, reads: "I am trying to be good to you but as you see it is not possible. All I do is make you suffer without you being worthy of me. It hurts me very much but it must be our destiny. Who knows? Forgive me that I have been so bad. I don't want to offend you but nevertheless I do it. Rebecca, I think that I am only worthy of your hatred and not of your love. You have been very good. I know that and I know that I don't pay any attention to you. I don't know why. I only can tell you that I won't be back until Sunday. I let you know because I can't go without telling you this . . . In telling you this I feel myself to be the most ungrateful man. This must be my end."

She then testified that she was notified by some friend about her husband's activity with a woman in Tijuana; that she went to the woman's home and saw defendant's car parked outside, at nighttime; that all lights were turned out and "everybody was asleep"; that later her husband told her that he never lived in Tijuana and that she told him about this occasion and "that why I was mad"; that as to her physical condition she was "very nervous" and had difficulty in working on account of it. When asked the cause of her nervousness she replied: "Well, sometimes a customer laugh and I cry

too''; that she was compelled to work, caring for children and working in the fish cannery; that defendant took her money and paid on the home which they bought in 1942 for $3,015, and on the furniture which they bought when they were first married; that the furniture is now worth about $100.

The agreement of sale as to the real property was received in evidence as defendant's exhibit. Plaintiff stated that defendant now wants to sell the real property and wanted one-half of the proceeds; that she refused because she had no place in which to live; that defendant has argued with her for years; that he ''had very, very bad temper . . . and everything I say, everything I do was wrong to him. He always mean to me''; that he swore at her and took dishes, tools and a medicine case out of the house when she was not home.

A witness called by plaintiff testified that he knew about defendant and the woman in Tijuana; that he saw him with her on the street and at her home on several occasions; that he told plaintiff about it and took her over there ''so she would see.''

A neighbor testified as to the quarreling between plaintiff and defendant on several occasions; that during the war defendant wanted a divorce and he sent plaintiff to Mexico; that she later returned; that they lived in the same house but not as husband and wife; that one week Mr. Cairo would want a divorce and the next week he didn't want one.

Defendant testified that he received $12 per day and was in charge of the kitchen in a large hotel; that he wrote the letter in evidence but did not know why his wife wanted to bring that matter up in court. He claimed that he was only rooming at the house in Tijuana until he could find an apartment.

*Negley* v. *Negley, supra,* relied upon by defendant, also states the rule to be that where the acts complained of were such as to inevitably cause grievous mental suffering, a trial judge is justified in drawing the inference of such suffering from those acts, citing cases. It appears to us that the evidence generalized above sufficiently establishes acts of extreme cruelty. The trial judge was justified in drawing the inference of grievous mental suffering from the acts of the defendant which were established by the evidence. (*Tompkins* v. *Tompkins,* 83 Cal.App.2d 71, 74-75 [187 P.2d 840].)

In contested cases the rule as to corroboration appears to be that the principal object of the corroboration rule is to prevent collusion between the parties and when it is clear

from the evidence in a contested action that there is no collusion the court is justified in granting a decree upon evidence which is only slightly corroborated if otherwise the court is satisfied that the prevailing party is entitled to a decree. (See, also, *McGann* v. *McGann*, 82 Cal.App.2d 382 [186 P.2d 424].) There was sufficient corroboration as to some of the material facts related by the plaintiff.

During the trial, counsel for defendant moved to amend his pleadings to conform to the proof regarding community property. He desired to show by the proposed amendment that the property was being purchased under a joint tenancy contract. The trial court denied the motion, stating that the findings "should recite or can recite . . . that the property which is in joint tenancy on record is, as a matter of fact, community property." No other or further request for an amendment was made. The force of defendant's argument, in this respect, is predicated upon the holding in *Tomaier* v. *Tomaier*, 50 Cal.App.2d 516, 519 [123 P.2d 548], indicating that a trial court has "no power to divide the property held in joint tenancy as though it were in effect community property." The dicta thus quoted are disapproved in *Tomaier* v. *Tomaier*, 23 Cal.2d 754, 757 [146 P.2d 905], where it was held that evidence may be admitted to show that the husband and wife intended to take property as community property, even though they accepted a deed drawn to them as joint tenants; that if the evidence establishes that property is held as community property, it cannot also be held in joint tenancy, for certain incidents of the latter are inconsistent with incidents of community property.

Since the complaint alleged the real property to be community and there is no denial of that fact no additional proof of that fact is necessary. (Code Civ. Proc., § 462; *Beatty* v. *Pacific States S. & L. Co.*, 4 Cal.App.2d 692, 698 [41 P.2d 378].)

This same question arose in *Tompkins* v. *Tompkins, supra.* It was there said, at page 77:

". . . that even though the real property awarded by the trial court to plaintiff did stand in the names of the parties as joint tenants, the complaint alleges and the answer admits that it is community property. There is no evidence in the record to the contrary. If the parties so intend, property taken by a husband and wife as joint tenants is community property. . . . Since defendant in his answer to the complaint

admits the real property to be community property its treatment as such by the trial court was proper.''

The evidence conclusively shows that it was purchased out of community funds; that defendant never attempted to dispute the admitted fact that the property was actually and was intended to be community property. All of the parties, throughout the trial, considered the real property as community property, and the trial court had the right, under the cause of action alleged, to assign the community property to the respective parties in such proportion as the court deemed just. (Civ. Code, § 146, subd. 1; *Crouch* v. *Crouch,* 63 Cal.App.2d 747 [147 P.2d 678].) The evidence sufficiently supports the trial court's finding in this respect.

Judgment affirmed.

Mussell, J., concurred.