[Civ. No. 14724.  First Dist., Div. One.  Jan. 9, 1952.]

THELMA HELLMAN, Respondent, v. HENRY HELLMAN,
Appellant.

Norman S. Menifee for Appellant.

Francis N. Foley for Respondent.

WOOD (Fred B.), J.—Defendant appeals from an interlocutory decree which granted plaintiff a divorce on the ground of extreme cruelty, divided the community property, and awarded plaintiff alimony and counsel fees.

Appellant bases his appeal upon asserted (1) lack of corroboration of respondent's testimony concerning the alleged acts of cruelty; (2) erroneous award of support and maintenance to respondent; (3) erroneous award of all the community property to respondent; and (4) award of counsel fees for services already rendered.

*(1) As to proof of acts of cruelty,* respondent testified that for about five years prior to the separation appellant's attitude was extremely critical; he seemed to be unreasonable; he could not be pleased; he criticized everything she did and made her life at home unbearable in every way; he objected to her knitting; he did not make friends easily and did not seem to like anyone with whom respondent associated, and made things uncomfortable in the home for anyone who came there. This attitude and these expressions on his part were constant during those five years. At various times he talked about someone else he was interested in; he told respondent on several occasions that if she was not satisfied with the way he was, there was some woman who would be.

Asked about the effect of this course of conduct on her health, she said there was tension in the home all the time and she found it better if she spent as much time as possible away from home. She joined a couple of garden clubs. She could not get appellant interested in any outside interests, although he did attend a couple of Christmas parties. He never offered to take her any place. There was an entire lack of cordiality and feeling on his part toward her. As to the separation, respondent testified: One morning appellant came into her room and told her he was leaving and taking the car; that this was a separation—he would not be back; that he had seen a lawyer in San Francisco; that he was leaving so she could get a divorce. She asked him for some money, because he had not given her any for a week before that, and he told her there was $10 on the dresser and the telephone number of his attorney in San Francisco and for her to get in touch with the attorney. That is all the money he left her. He took the automobile with him.

The corroborating witness lived next door to the parties for two years prior to the separation. She testified that she was often in their home; that she always felt that they were very ill-suited to each other; that they did not have much in common at all. Asked if appellant was morose and quiet, she said, "Yes, he always seemed quiet." She never knew of appellant ever taking respondent to places of amusement or places of that nature. She did not think they cared very much for the same thing. She had noticed that situation existing for about a year. Asked if she observed any effect on respondent with regard to that treatment, she said, "I think they were unhappy," and that it made respondent nervous and tense. Here there is corroboration of some of the material facts related by the respondent. We cannot say as a matter of law that it is insufficient. "The principal object of the corroboration rule is to prevent collusion between the parties, and where it is clear from the evidence in a contested action that there is no collusion, the court is justified in granting the decree upon evidence which is only slightly corroborated if otherwise the court is satisfied that the prevailing party is entitled to a decree." (*Tompkins* v. *Tompkins,* 83 Cal.App.2d 71, 76 [187 P.2d 840], corroboration of one of a series of acts, in a contested case; see, also, *Keener* v. *Keener,* 18 Cal.2d 445, 449 [116 P.2d 1]; *Krull* v. *Krull,* 105 Cal.App.2d 56, 60 [233 P.2d 13]; *LaVigne* v. *LaVigne,* 96 Cal.App.2d 531, 534 [216 P.2d 75]; *Cairo* v. *Cairo,* 87 Cal.

App.2d 558, 561-562 [197 P.2d 208]; *McGann* v. *McGann,* 82 Cal.App.2d 382, 386-387 [186 P.2d 424]; *Serns* v. *Serns,* 70 Cal.App.2d 527, 529 [161 P.2d 417]; *Ungemach* v. *Ungemach,* 61 Cal.App.2d 29, 34, 36-39 [142 P.2d 99].) Unlike *Truax* v. *Truax,* 62 Cal.App.2d 441 [145 P.2d 88], upon which appellant relies, this corroborating testimony does relate to conduct narrated by the respondent. We have examined the other cases which appellant invokes but find them inapplicable. In *Farrand* v. *Farrand,* 77 Cal.App.2d 840 [176 P.2d 773], there was corroboration but the reviewing court concluded that the acts proven were not acts of cruelty which caused grievous mental suffering. In *Dean* v. *Dean,* 97 Cal.App.2d 455 [218 P.2d 54], there was no corroboration at all by a third party, as we read the decision. *Gleason* v. *Gleason,* 13 Cal.App.2d 231 [56 P.2d 973], was decided upon the basis of corroboration of inconsequential points only. In *Del Ruth* v. *Del Ruth,* 75 Cal.App.2d 638 [171 P.2d 34], there was corroboration which the reviewing court deemed sufficient to support the judgment. The cause was remanded for a new trial because the losing party had been arbitrarily and unreasonably limited in the presentation of her case. In *Negley* v. *Negley,* 82 Cal.App.2d 355 [186 P.2d 151], the judgment was reversed for insufficient evidence of grievous mental suffering, not for insufficient corroboration of the respondent's testimony even though the reviewing court described the córroboration as meager.

Appellant stresses the following testimony of the corroborating witness, given upon cross-examination: "MR. MENIFEE [attorney for appellant]: All you observed, they did not seem to be happy, is that right? A. Yes. Q. You don't know any reason for it, do you? A. No, it did seem like two people were living together who should not be together. Q. You did not blame any particular one? A. That would be difficult to do"; and the following, upon redirect examination: "MR. FOLEY [attorney for respondent]: Q. Did you notice any conduct by Mr. Hellman towards Mrs. Hellman that you felt was not proper or could be objected to? A. No. MR. MENIFEE: Q. Or vice versa? A. No." ▮ Insofar as this pertained to probative facts, it tended to produce inconsistencies and uncertainties in the testimony of the witness, which it was the function of the trial court to resolve. ▮ Most of it pertained to ultimate facts which it was the function of the court, not the witness, to determine. Such opinions and conclusions of the witness, even though admitted in evidence, could not bind

ur control the court in making its findings. (See cases cited in 10 Cal.Jur. 948, § 211.)

■ *(2) The award of alimony,* $125 per month, appellant claims is unreasonable because it will consume nearly half of his earnings and because respondent worked prior to the marriage and was working part of the time during the marriage. He also urges that the award of the home and furnishings to respondent lends emphasis to the asserted unreasonableness of the alimony award.

This claim overlooks the evidence that respondent is unable to do any heavy or arduous labor because of a hernia which needs attention; she had been previously employed, despite the hernia, because that work was mostly "mental"; the work she has been able to find she would be unable to carry on unless the hernia is repaired; she has inquired of two doctors and finds the operation for hernia, and the convalescing, would be quite expensive, about $500; she has not done anything about it because of the expense; she would try secretarial work but has not done any for many years and her typing is very slow and not correct; since the separation, she has had dental work done, and medical care for a growth on her eyes, and has not been able to pay for it. The family home, awarded to her, does not produce an income. She rented some space in it for a time. The last people moved out five months before the trial and she has been unable to get anybody since. The home is encumbered for approximately $5,000, payable at the rate of $60 a month. As an incident of the award of the home to her, it will be her obligation, as between her and appellant, to make those payments. The facts support the award. "The allowance of alimony rests within the discretion of the trial court, and the appellate courts will interfere only where there is an abuse of discretion. [Citations.]" *(Melny v. Melny,* 90 Cal. App.2d 672, 679 [203 P.2d 588].) We find no abuse of discretion in the award of alimony. It is, of course, subject to modification if conditions change.

■ *(3) As to the apportionment of the community property,* it appears that the court awarded respondent the family home and the furniture, furnishings and equipment therein; to appellant, an automobile and an insurance policy on his life.

Appellant testified that prior to the trial he sold the automobile for $660 and expended $400 thereof in payment of various obligations, and paid $200 to his attorney. We do not find any evidence in the record on the question whether or not

the automobile was community property. Respondent alleged that it was, and appellant denied that allegation.

Nor do we find in the record any reference to the insurance policy. In the clerk's transcript there is a copy of a memorandum concerning the award of community property, presented by respondent's attorney to the trial court after the trial and before findings were prepared, which states that an examination of canceled checks (not in evidence) disclosed the existence of a policy on the life of appellant. There is nothing to indicate the amount of that policy or whether it had any surrender value.

It appears therefore, that the court awarded respondent virtually all of the community property. The home was valued at $15,000 or $16,000, subject to an encumbrance of about $5,000, payable at the rate of $60 per month. There is no evidence of the value of the furniture. Both parties testified they did not know its value.

The parties stipulated that the home was community property. In support of his claim that the decree makes an unjust apportionment of the community property, appellant directs attention to the fact that payments upon the home, as well as for all other expenses, were made from a joint checking account into which they deposited his earnings and hers and also about $9,900 which he inherited; that a considerable portion of the purchase price of the home must have been paid with his separate funds; and it is, therefore, unjust to award her the entire interest in the home, and none to him. Respondent testified that of appellant's inheritance $3,000 went into the house in different ways; there were several loans they had made in building the house and buying equipment for the house; but that there was a $1,400 insurance settlement on her which also went into the checking account and was used to pay for the home. She directs attention, also, to the $5,000 encumbrance, which as an incident of the award it was her obligation to pay.

The fact that the home is community property is of greater significance than how it became such, whether derived wholly from the community funds, or the separate funds of either or both parties, or in part from each of those sources. ■ In granting a divorce to one of the parties on the ground of the extreme cruelty of the other, it became the duty of the trial court to assign the community property to the respective parties "in such proportions as the court, from all the facts of the case, and the condition of the parties, may deem just." (Civ. Code, § 146.) This is construed as meaning that the

court must award more than one half to the party who has suffered the wrong. ■ How much more than half, rests in the sound discretion of the trial court, subject to the power of revision vested in an appellate court by the provisions of section 148 of the code. ■ Every intendment is in favor of what the trial court did, even though it awarded all to the innocent party. (See *Barham* v. *Barham,* 33 Cal.2d 416, 431 [202 P.2d 289]; *Nelson* v. *Nelson,* 100 Cal.App.2d 348, 350 [223 P.2d 636]; *Jackson* v. *Jackson,* 93 Cal.App.2d 101, 107 [208 P.2d 997]; *Cairo* v. *Cairo, supra,* 87 Cal.App.2d 558, 562-563; *Hill* v. *Hill,* 82 Cal.App.2d 682, 696-697 [187 P.2d 28]; and *Arnold* v. *Arnold,* 76 Cal.App.2d 877, 883-885 [174 P.2d 674], reviewing earlier cases.) ■ The facts which we have summarized under this and other topics indicate no abuse of discretion by the trial court in the assignment of the community property.

■ *(4) The award of counsel fees,* $200, "in addition to any sum heretofore paid," should be read in the light of respondent's original request therefor, made in her complaint, and the court's order in response to that request, entered a year before the trial and prior to the filing of appellant's answer, in which order the court directed appellant to pay respondent's attorney forthwith the sum of $200 "on account of counsel fees."

By that order the court granted the application in part and reserved for later determination the question whether a larger sum should be awarded. The fact that such determination was made at the conclusion of the trial does not characterize it as an award for past services. (See *De Vall* v. *De Vall,* 102 Cal.App.2d 53, 57-59 [226 P.2d 605]; *Nelson* v. *Nelson, supra,* 100 Cal.App.2d 348, 351-352; *Fallon* v. *Fallon,* 83 Cal.App.2d 798, 806 [189 P.2d 766].)

The judgment appealed from is affirmed.

Peters, P. J., and Bray, J., concurred.