[Civ. No. 19854. Second Dist., Div. Three. May 24, 1954.]

BARBARA JEAN OHLIGSCHLAGER, Respondent, v. JAMES K. OHLIGSCHLAGER, Appellant.

Loughman & Fay for Appellant.

Hammons, Willard & Todd for Respondent.

SHINN, P. J.—Defendant James K. Ohligschlager appeals from a decree granting a divorce to plaintiff Barbara Jean Ohligschlager on grounds of mental cruelty. Custody of the parties' child was awarded to plaintiff, with rights of visitation to the husband. The community property of the parties was divided approximately equally. The court ordered defendant to pay plaintiff $250 per month alimony and support money until a final decree should be entered, whereafter defendant is to pay $75 per month for support of the child. The parties were married on December 28, 1946, at Ventura,

California. At that time defendant was a first lieutenant in the Army Air Force. They separated in July, 1950.

The court found that: "That during the said marriage of the parties hereto, the defendant treated the plaintiff in a cruel manner and in particular as follows:

"(a) That on numerous and various occasions during the course of the marriage, and so numerous as to constitute a continuous course of conduct, the defendant wilfully failed and refused to discuss with the plaintiff sundry mutual problems of the parties hereto; in particular, these problems related to place of residence of the parties, care of the parties' child, family finances, and the sex life of the parties hereto.

"(b) That on numerous occasions, and so repeatedly as to constitute a continuous course of conduct on his part, the defendant wholly failed to assume or exercise the ordinary and normal responsibilities of a husband in connection with the social obligations of the parties hereto, in that when the guests were in the home of the parties, the defendant would assume a passive attitude, would fail to take any active part in the conversation, would exercise no init[i]ative in extending hospitalities to such guests or in their entertainment, and would be moody and uncommunicative with the plaintiff and with such guests.

"That all of said conduct on the part of the defendant was wilful[1] and wrongful[1] and without cause or provocation on the part of the plaintiff; that said conduct caused the plaintiff great and extreme mental suffering and anguish, caused her embarrassment and humiliation and so affected her health and happiness that it was necessary for her to, and she did, consult physicians and psychiatrists as a result thereof; that the acts and course of conduct on the part of the defendant destroyed the legitimate objects of matrimony and there is no lik[e]lihood that the marriage can be saved; that a continuation of the marriage would cause a serious hazard to the health of this plaintiff.

"That the marriage relationship has so far deteriorated that the parties hereto cannot even live together as friends—that their relationship to each other is that of strangers."

Defendant in his briefs argues the weight of the evidence and contends that the court should have found that he had not been guilty of extreme cruelty. We have read the record and are satisfied that the findings are supported by evidence that warranted the granting of a divorce. It is with reluctance that we summarize the evidence relative to the

unhappy conditions under which these young people lived, which, as the court found were such "That the marriage relationship has so far deteriorated that the parties hereto cannot even live together as friends—that their relationship to each other is that of strangers."

From time to time defendant was transferred to different fields. Plaintiff accompanied him and encountered many difficulties in finding suitable abodes. During this time it was plaintiff's desire not to have children. She believed it would be unwise, not only because of the traveling made necessary by the transfers of defendant, but also because the marriage was an unhappy one. Upon the subject of having children there was sharp disagreement. Defendant had not only desires but strong scruples on the subject, of religious origin and belief, which were in conflict with plaintiff's desire to use measures which would prevent conception. Plaintiff, against her better judgment, gave in; although not planned, a child was born while the parties were living in Tacoma, in August, 1948. For the greater part of their married life the couple have never been happy together, and plaintiff believed it would be wrong to bring any more children into the family. All sexual relations were terminated in September, 1949. In July, 1950, plaintiff returned to her former home in Ventura, leaving defendant in Tacoma. She returned to Tacoma and again went to Ventura. In July, 1951, defendant spent three weeks in Ventura, living under the same roof with plaintiff. He was sent to Labrador and returned in August, 1952. Soon after, plaintiff instituted this action. There was evidence that defendant was habitually taciturn, uncommunicative, unwilling to discuss family affairs and problems, secretive with respect to his finances, reluctant to give plaintiff money which she needed, indifferent toward the forthcoming birth of the child, unsociable toward guests and unwilling to make an effort to make the marriage a successful one. All this was testified to by plaintiff and her mother. The latter visited the couple in Tacoma for six weeks and testified that they treated each other as strangers. After plaintiff had spent two months in Ventura, following the birth of the baby, she returned to Tacoma in order to make another effort to save the marriage. Fearing that she might be the one at fault she consulted a psychiatrist, seeking an answer to her problem. She urged defendant to do the same, but upon the advice of his chaplain he declined to do so. Shortly before the trial he consulted with someone in the

American Institute of Family Relations. Whatever advice the parties received failed to help the situation.

The law provides a method of escape from marital relationships that have become intolerable to one or both of the parties. This was such a marriage. There were mutual desires to solve the marital problems and avoid a divorce, but the sincere efforts of plaintiff had failed and it appeared clearly from the evidence that further efforts would have been futile. It is not the policy of the law that a man and his wife should be required to live together, or be held in a marital relationship, when they have come to regard each other as mere strangers, even though one of them objects to its termination. And when it appears that honest and repeated efforts have been made by the complaining party to overcome the causes of the failure of the marriage, and that they cannot be overcome, it would be an act of injustice to withhold the relief which the law provides. Defendant had his day in court before an understanding and patient judge, and he has been found at fault. In his testimony he stoutly defended his own conduct and placed the blame for failure of the marriage upon his wife. The finding of cruelty, wrongfully inflicted, means only that it was within defendant's power to change his ways, which were the principal cause of dissension, and that his failure to do so was wrongful. It is not given to a reviewing court to place itself in the position of the trial judge, even if that were possible. And it is particularly true that in a contested suit for divorce an opportunity to observe the demeanor of the parties, to weigh their motives and judge of their characters, is indispensable to an intelligent and just decision with respect to the responsibility for disruption of the marriage.

Defendant earns $550, net, per month as a captain in the Air Corps. While he remains married his subsistence allowances amount to about $130 per month. Plaintiff is willing to obtain employment and become self-supporting. The court has found that continuation of the marriage would cause a serious hazard to the health of plaintiff. This finding has support in the evidence. The court denied defendant's motion for a new trial, upon which motion defendant no doubt advanced all the arguments that are made on the appeal. We are satisfied that the court reached an eminently wise and just decision and that the appeal is without merit.

The judgment is affirmed.

Wood (Parker), J., and Vallée, J., concurred.