[Civ. No. 17933.   First Dist., Div. One.   Feb. 17, 1959.]

FRANK E. DIFLOE, Respondent, v. HELEN R. DIFLOE, Appellant.

Kenneth L. Johnson and Everett H. Roan for Appellant.

Ted James Kukula for Respondent.

PETERS, P. J.—The trial court granted Frank Difloe a divorce from Helen Difloe, finding that the wife was guilty of extreme cruelty in that "since on or about Christmas 1953 defendant [wife] has failed and refused to permit plaintiff to see or visit the minor child of the parties, . . . and has concealed the child's whereabouts from the plaintiff, without any justification on defendant's part or provocation on plaintiff's part." Helen Difloe appeals.

The plaintiff is a chief gunner's mate in the United States Navy, on active duty. During the times here involved he was in San Francisco on relatively rare intervals, and but for short periods of time. The parties were married on March 3, 1945, and separated on January 11, 1952. There is one child of the marriage. In December of 1955, the husband filed the present action for divorce, alleging extreme cruelty. In 1953 the husband brought a prior action for divorce, which was denied by the trial court. In that action, without a cross-complaint by the wife, or without any claim for affirmative relief by her, the trial court granted the wife custody of the child, with reasonable visitation rights in the husband, and awarded the wife $200 per month alimony and support money. In the present action the cruelty charged is that the wife failed and refused to permit plaintiff to see or to visit the minor child of the parties and concealed that child from the plaintiff. As already pointed out, the trial court found that that charge was supported, awarded the custody of the child to the wife, granted the husband reasonable visitation rights, and awarded attorney's fees to the wife. The wife appeals, her major contention being that the finding above quoted is unsupported.

The factual situation is somewhat unusual. The so-called separate maintenance decree awarding the wife custody of the child and granting the husband reasonable visitation rights was entered in August of 1953, after a trial in June of 1953. At that time the parties were living in a multiple dwelling project on Pali Street in San Francisco. The wife and child continued to live there after the separation of the parties. The husband went to sea. Early in December, 1953, the wife moved to Folsom Street. She did not inform her husband of her change of address, although, admittedly, she

knew how to communicate with him. On Christmas Eve of 1953 the husband arrived in San Francisco and proceeded to their former address on Pali Street to visit his child and to bring her some Christmas gifts. He discovered that his wife had moved and that the then tenant of the premises did not know her new address. He made no inquiry of other tenants in the apartment. He did look in the telephone directory, but his wife's name was not listed. The parties did not have a telephone at the Pali Street address, but the wife did secure a telephone at the Folsom Street home, but it was not listed in the directory until that book came out in July of 1954. The husband had to leave on December 27th and did not return to San Francisco until March of 1954, when he again looked through the appropriate directories and could not find her address.

The wife stayed at the Folsom Street address until June of 1954 and then moved to a house on Vicente Street. Here, too, she had a listed telephone. She did not notify her husband of this new address. She sent her husband a packet and a letter containing certain documents but, according to the husband, did not place a return address on the envelopes. The wife admitted that after the separation in 1952 she did not offer to write to the plaintiff on behalf of the child, nor did she suggest to the child that she would do so.

The husband also testified that he wrote to his wife's parents in Detroit asking for his wife's present address, but received no answer. He admitted that in the latter part of 1954 when he was in San Francisco on a three-day visit he found his wife's address in a telephone book but did not call upon her, nor did he telephone, because, so he testified, he was too busy with official naval duties, and had decided to file this case asking for a divorce. He made no attempt, after discovering his wife's address, to get in touch with his wife or child. The original complaint in this action was filed in December, 1955.

This is a fair summary of the husband's testimony as to his unsuccessful efforts to find or to see his child. He admitted that his wife at no time had told him that he could not see the child. The wife testified that she had moved from Pali Street to Folsom, and then to Vicente, for health reasons and on doctor's orders; that at no time was she trying to conceal her address from her husband, nor was she trying to prohibit him from seeing the child. The Pali Street abode was part of an 8-family multiple unit and when she moved from there she told at least four of the tenants where she was going.

Admittedly, when the husband called at the Pali Street address in December of 1953 he inquired for his wife and child only at his own old address, and made no effort to make inquiry of the other tenants who were friends of him and his wife.

Admittedly, the wife notified the Navy Allotment Board of her various changes of address, and admittedly the husband knew that this had been done and that her new address could be secured from that office. He made no such inquiry. The wife also testified that she notified the commanding officer, and the chaplain of the ship on which the husband was serving, of her change of addresses. The husband testified that he made no inquiry of these people because he did not want to mix his personal affairs with official naval affairs. The wife also testified that in December of 1953 she took the child down to the ship on which her husband was serving and talked to the commander but was unable to see her husband. She stated that she had no desire to deprive her husband of his visitation rights, that she wanted him to see the child, and that it was for that reason that she left her change of address with the officials of her husband's ship.

There was corroborated evidence that the husband's failure to see his child caused him mental anguish.

On this evidence the trial court granted the divorce to the husband, finding that "defendant has failed and refused to permit plaintiff to see or visit the minor child . . . and has concealed the child's whereabouts from the plaintiff."

If this finding is supported, there is no doubt that such actions could constitute extreme cruelty sufficient to warrant a divorce. ■ Of course, what is or is not grievous mental suffering is a fact question. The finding of the trial court on such an issue will not be set aside unless the evidence to support it is so slight as to indicate an abuse of discretion. (*Keener* v. *Keener*, 18 Cal.2d 445 [116 P.2d 1]; *Griffith* v. *Griffith*, 129 Cal.App.2d 803 [277 P.2d 850]; *Wasserstrom* v. *Wasserstrom*, 139 Cal.App.2d 798 [294 P.2d 497]; *Ohligschlager* v. *Ohligschlager*, 125 Cal.App.2d 458 [270 P.2d 577]; see cases collected 16 Cal.Jur.2d 317, § 21.) ■ While the finding of infliction of grievous mental suffering is generally a matter within the discretion of the trial court, such a finding will be set aside, however, if there is not some substantial evidence to support it. (*Farrand* v. *Farrand*, 77 Cal.App.2d 840 [176 P.2d 773]; *Truax* v. *Truax*, 62 Cal.App.2d 441 [145

P.2d 88] ; *Negley* v. *Negley*, 82 Cal.App.2d 355 [186 P. 2d 151].)

The trial judge in the instant case was of the opinion that the wife was under a positive duty to notify her husband of each change of address so that his visitation rights should not be impaired, and that her failure to notify him constituted extreme cruelty. The judge was also apparently of the opinion that the failure of the husband to make reasonable efforts to discover that address was of no legal significance. We do not think that that is the law. Certainly the spouse having custody of a child of the marriage cannot properly conceal or hide the whereabouts of the child from the spouse having visitation rights. If the spouse having custody commits such acts, a proper case of extreme cruelty has been shown. But the spouse having visitation rights cannot sit back and await notification of a change of address, and, when it is not forthcoming, make no reasonable efforts to see the child, and then claim, as a grounds of divorce, that he has suffered mental anguish because he has not seen his child. In such a case the claimed mental anguish is not attributable to the failure to furnish the change of address, but is directly attributable, in part at least, to that spouse's failure to exercise reasonable diligence to find the child.

In the instant case the trial court made no finding on the acts of the husband. Had such a finding been made it necessarily would have been to the effect that the husband's lack of due diligence was at least one of the basic causes of his mental anguish. In such a situation, the husband had not proved grounds for a divorce.

In the present case the wife made no effort to conceal or hide the child. At no time did she leave San Francisco. After January of 1954 she had a telephone, and a simple inquiry of the telephone company would have elicited that number. After July of 1954, and continuously thereafter, her name, address and phone number were listed in the telephone book and city directory. The wife told four of the other seven tenants living in the same apartment house where she and her husband had lived, of her Folsom Street address. The wife notified the Naval Allotment Board of her change of addresses, and her husband knew this, and knew that a simple inquiry would have secured her present address. The wife notified the commanding officer and chaplain of her husband's ship of her addresses, but the husband made no inquiry of them. Certainly such acts do not support a finding

that the wife has "refused to permit" her husband to see the child and has "concealed" the child from her husband. It would have been a gracious act to have notified her husband of her new addresses, and perhaps she should have done so, but her failure to do so under the circumstances cannot be held to constitute extreme cruelty. Particularly is this so where the evidence without contradiction shows that, had the husband exercised the slightest diligence, he could have discovered the child's whereabouts. After July of 1954 (and he visited San Francisco several times between July and December of that year), all he had to do was to look into a telephone book. He admitted that he did so in the latter part of 1954 and discovered the address, but made no effort to telephone or to see the child. This hardly supports findings that the child was concealed from him or that he was suffering severe mental anguish because of his inability to see the child.

We are not unmindful of the fact that plaintiff was in the Navy and at sea much of the time. But plaintiff testified that he was in San Francisco at least six times in 1954, at least three of which were after July, and that on these three occasions he made no effort to find his wife or child. On the other three visits in 1954 only in March did he make any effort at all to find them. Plaintiff admitted to being in San Francisco in February and again in May of 1955, and that on these occasions he made no attempt to see his wife or child or to find them, although he then knew their address. Each visit was of three to seven days' duration.

Under these circumstances it must be held that the challenged finding is unsupported.

The judgment appealed from is reversed.

Bray, J., and Wood (Fred B.), J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied April 15, 1959. Peters, J., did not participate therein. Schauer, J., was of the opinion that the petition should be granted.