[Civ. No. 19056. First Dist., Div. One. June 9, 1960.]

ROBERT D. HAYES, Respondent, v. FRANCES C. HAYES, Appellant.

James Murray and Markuse & Murray for Appellant.

Doyle & Clecak for Respondent.

TOBRINER, J.—This case mainly involves appellant's contention that a divorce granted upon the ground of extreme cruelty cannot stand upon an exclusive showing of "constant and intemperate use of alcohol." The contention fails, however, because the proof demonstrates more than appellant's alcoholism: other acts of misconduct support the decree. Nor can appellant defeat the decree upon the proposition that alcoholism must be treated like a disease and therefore neither forms the substance of a charge of cruelty nor the wrongful infliction of mental suffering. Moreover, despite appellant's argument that respondent failed to prove such mental suffering, the record supports the finding that respondent became "ill in mind and body." Finally, any suggestion that the record shows no corroboration of respondent's residence or, indeed, of the alleged acts of cruelty, finds its answer in the record itself. We discuss these propositions in the above order *infra* in more detail.

The basic facts establish that the parties married in San Francisco on January 27, 1954; they separated on February 15, 1957; the parties had no children. They were not in affluent economic circumstances. As a retail liquor store clerk, respondent earned approximately $76 per week take home pay. The parties' only community property consisted of a 1956 Mercury car, in which they owned no equity, and miscellaneous household furnishings.

The history of the proceedings begins with respondent's filing suit for divorce on February 26, 1957, on the ground of extreme cruelty. Appellant answered, denying the charges; she cross-complained upon the ground of extreme cruelty. Holding that appellant take nothing by her cross-complaint, the trial court granted a decree of divorce to respondent "upon the grounds of the Defendant and cross-complainant's extreme cruelty." The court found that "said cruelty chiefly consisted in the constant and intemperate use of alcohol by the Defendant and Cross-complainant, and that such conduct . . . caused

the Plaintiff and Cross-defendant to become ill in mind and body and interfered with the occupation of the Plaintiff and Cross-defendant.'' The record discloses no evidence upon which the husband's alleged cruelty could be predicated. The court awarded to appellant the miscellaneous household furniture and furnishings then in her possession and to respondent the 1956 Mercury then in his possession. The court ordered respondent to pay the specified community debts, the sum of $554.06. The court denied appellant's motion for a new trial.

Appellant's first and major contention that a decree for divorce on the ground of extreme cruelty cannot rest upon a finding that such ''cruelty chiefly consisted in the constant and intemperate use of alcohol'' overlooks both the decisions which predicate cruelty upon other acts of misconduct in combination with excessive drinking and the record here which discloses such other acts.

While the divorce which emanates from extreme cruelty must be distinguished from that which results from habitual intemperance, the fact that addiction to alcohol may play a part in the former does not compel the aggrieved spouse to find his sole recourse in the latter. Civil Code, section 94, defines extreme cruelty as the ''wrongful infliction of grievous bodily injury, or grievous mental suffering, upon the other by one party to the marriage.'' Habitual intemperance as defined by Civil Code, section 106, and as pertinent here constitutes ''that degree of intemperance . . . which would reasonably inflict a course of great mental anguish upon the innocent party'' and must continue for a period of more than one year. (Civ. Code, § 107.) That excessive drinking may in itself found an action under section 106 does not mean that such drinking in combination with other factors may not give rise to an action under section 94.

An unbroken line of decisions recognizes that alcoholism may serve as an element in the totality of conduct which constitutes extreme cruelty. Thus, in *Grierson* v. *Grierson* (1909), 156 Cal. 434 [105 P. 120, 134 Am.St.Rep. 137], in passing upon the issue of whether a cause of action for habitual intemperance and for extreme cruelty were improperly united because '' 'intemperance cannot be pleaded to support cruelty,' '' the court alludes to the separateness of the two causes and states, ''The second count contains allegations of excessive drinking of liquor *coupled with other acts* which, in themselves, would amount to extreme cruelty.'' (P. 437; italics added.) Citing Grierson, the court in *Bennett* v. *Bennett* (1921), 55

Cal.App. 268 [203 P. 162], holds that although "lapses" as to infidelity and habitual intemperance "may not have furnished ground for divorce" upon either such bases, they "were alleged and shown to have caused his wife great mental anguish and serious physical and nervous disorder. They thus furnished sufficient basis for an action for divorce upon the ground of extreme cruelty." (P. 269.)

Finally, *Stanton* v. *Stanton* (1931), 113 Cal.App. 462, 464 [298 P. 524], points out, "It would appear to be elementary that excessive addiction to the use of intoxicating liquor or habitual intemperance may be a contributing factor to a course of conduct on the part of one of the spouses that would inflict grievous physical injury or grievous mental suffering on the other. . . . Nor do we understand that the appellant contends otherwise." On the other hand, *Farrand* v. *Farrand* (1947), 77 Cal.App.2d 840 [176 P.2d 773], cited by appellant in support of her position that excessive drinking here afforded no ground of divorce for extreme cruelty, does not involve the factual situation of a case in which the drinking is but one of a number of instances of cruelty. The decision makes the limited observation: "It is the rule that *mere drunkenness* on the part of one spouse is not such cruelty as to entitle the other to a divorce on the ground of cruelty." (P. 841; italics added.)

▇▇▇▇ The record discloses many other acts of appellant which coexisted with the drinking and supported the cause of action. Thus the husband testified: (1) "she was quarrelsome when I talked to her about the drinking—when I got home after work . . ."; (2) "she would start to talk very loud at night, and . . . she'd keep that up almost all night"; (3) "For three days and three nights I had no sleep. . . . The first two nights I hardly had any rest and I told her I couldn't go on this way any longer"; (4) "She started charging some with the pharmacy" for liquor; (5) "she started charging at Macy's the bill for $104—about 90 per cent of it was for whiskey purchases"; (6) "And at the store one time she made the excuse to use the bathroom and I was busy and lucky for me I knew she had taken a bottle herself and then I had to pay for it"; (7) "She was running up bills and I was trying to get the bills cleared up"; (8) "It was quite a strain going to work without sleep and being rundown. . . . It affected my nerves. I was quite nervous."

The showing of these many acts, which in themselves could sustain a finding of the husband's grievous mental suffering, founds the extreme cruelty upon a course of conduct which

embraced more than excessive drinking. Hence the record does not establish an abortive cause of action for habitual intemperance but a proven case of extreme cruelty.

Appellant contends, however, that, accepting this state of the facts, they do not establish a ground for divorce because alcoholism, if properly classified as a disease, forms neither the substance of extreme cruelty nor the wrongful infliction of mental suffering.

Appellant's argument that alcoholism results from neurotic and psychopathic conditions, that the victim cannot control his conduct, and that such a course of conduct cannot sustain a divorce for extreme cruelty raises defenses which cannot sustain her position here. In substance appellant contends that the Legislature distinguished between "causes of action based upon mental or physical illness and causes of action based upon wilful and wrongful acts by persons not suffering physical or mental illness" by recognizing habitual intemperance, and "mental illness" as separate grounds for divorce. Appellant tenders here for the first time a citation from the " 'Cyclopedia of Medicines, Surgery, Specialties,' volume 1, 1957, Editor in Chief, George Morris Piersolme," page 290, as to the psychopathic causation of alcoholism, but the record is barren of any attempted proof in the trial court of such psychiatric factors. Indeed the record does not actually sustain this suggestion of the involuntary nature of appellant's addiction in that Jeanette Collins, appellant's sister, testified that after appellant left Mrs. Clark's on February 15, 1957, her condition improved; as of the date of the trial "[s]he couldn't be any better. She looks better all the time." To the question "Has she been drinking?" the sister replied, "Not one drop."

Even if we were to turn to the larger problem of the relation of alcoholism to responsibility for conduct disrupting the marriage relation, we could not resolve the problem in appellant's favor at this level. The issue poses questions of a delicate as well as far-reaching nature, which call for the most careful scrutiny. An appellate court, on a limited record before it and in the present state of legislation and of the decisions, would presume to reach far beyond its function in attempting to lay down any such general rule as appellant suggests.

These considerations apply with equal force to appellant's next contention that the involuntary nature of her acts, due to the alcoholism, negate the fact of her "wrongful infliction" of grievous mental suffering upon the husband. To sus-

tain this position appellant cites *Fleming* v. *Fleming* (1892), 95 Cal. 430 [30 P. 566, 29 Am.St.Rep. 124], in which case the court found the husband's rape of a servant girl, unknown to the wife, constituted extreme cruelty, saying, "His conduct being voluntary . . . it is conclusively presumed that he intended the natural and ordinary effect thereof upon his wife." (P. 435.) Professor Armstrong (1 California Family Law, 1956 Supp., p. 15) notes the more recent case of *Ohligschlager* v. *Ohligschlager* (1954), 125 Cal.App.2d 458 [270 P.2d 577], which she summarizes, "[T]he husband was taciturn, disinclined to any social activity, and adamantly opposed on religious grounds to planned parenthood; while the temperament and desires and convictions of the wife, especially on the subject of preventing conception, were in direct opposition. After a number of separations and attempted reconciliations the situation had reached a point found by the trial court . . . [where the marriage had so deteriorated that the parties were as strangers to one another]." In affirming, the appellate court stated, *inter alia*, ". . . 'It is not the policy of the law that a man and his wife should be required to live together, or be held in a marital relationship, when they have come to regard each other as mere strangers, even though one of them objects to its termination. . . . *The finding of cruelty, wrongfully inflicted, means only that it was within defendant's power to change his ways, which were the principal cause of dissension, and that his failure to do so was wrongful.*' " (P. 16.)

As we have pointed out *supra*, this record does not show that appellant lacked the "power to change [her] ways"; indeed, her abstention from liquor after the separation indicates the opposite. The record is devoid of proof, if such fact is indeed provable, that an alcoholic cannot change his ways.

Moreover, other factors reduce the force of appellant's argument in favor of defining "wrongfully inflicts" so technically and narrowly as to exclude, as a ground of wrongful infliction, misconduct which results from alcoholism. Armstrong, 1 California Family Law, 136, points out, "The words 'wrongfully inflict' . . . would seem to imply that neither spouse in pursuit of his own views and desires may violate with impunity the intra-family peace by ruthless disregard of the other person's equal right and needs—however high the driving motive causing such disregard may be."

 The modern trend of the decisions in granting divorces relies less upon technical fault than upon the social interest in the functioning marriage. In the precedent-making

case of *De Burgh* v. *De Burgh* (1952), 39 Cal.2d 858 [250 P.2d 598], which redefines the doctrine of recrimination, Justice Traynor points out, "The rising divorce rate in the United States has compelled a growing recognition of marriage failure as a social problem and correspondingly less preoccupation with technical marital fault. . . . Marriage failure, rather than the fault of the parties, is the basis upon which such divorces are granted." (Pp. 867-868.) The decision alludes to the recognition by the Legislature of incurable insanity as a further instance of this trend. "The process of relieving the innocent husband or wife from a marriage that no longer existed *as a human relationship* and which served only as a formality to frustrate the normal life of the sane party was halting and tortuous." (*Aronstein* v. *Aronstein* (1959), 170 Cal.App.2d 494, 497 [339 P.2d 191]; italics added.)

██ Neither this record nor the factors discussed above would justify a technical constriction of the term wrongful infliction to bar as a ground of divorce acts of misconduct, which, here, may have been caused by drinking, but which destroy the marriage as a functioning relationship. Emotional difficulties may have produced the misconduct as, indeed, they may have caused the drinking itself. But the misconduct does not dissolve in the emotional and alcoholic ingredients which induced it. Neither legislative mandate nor our knowledge of psychiatry direct or enable us to disentangle the emotional background which here caused, or could, in other marital situations, cause, the wrongful conduct. We cannot flatly rule that the presence of the alcoholism destroys the wrongful infliction of such conduct as disrupts the functioning marriage.

Turning to appellant's contention that respondent did not meet "the burden of proving grievous mental suffering," we believe ample evidence sustained the trial court's finding that "such conduct . . . caused the Plaintiff and Cross-defendant to become ill in mind and body and interfered with the occupation of the Plaintiff and Cross-defendant." ██ In upholding a divorce upon the ground of extreme cruelty based in part upon excessive drinking, the decision in *Stanton* v. *Stanton, supra* (1931), 113 Cal.App. 462, uses language which we think applicable here: "That such a course might cause grievous mental suffering to respondent can hardly be said to be open to serious doubt." (P. 465.) Indeed, the record here and the supported finding dispose of appellant's argument that respondent failed to show more than a state of being "nervous and upset" (citing *Farrand* v. *Farrand, supra* (1947), 77 Cal.

App.2d 840, and *Truax* v. *Truax* (1944), 62 Cal.App.2d 441 [145 P.2d 88] ). The finding embraces more than such nervousness and the record supports it.

Analyzing, lastly, the questions of corroboration, we find that the record establishes corroboration both as to cruelty and as to respondent's residence.

As to the cruelty, the requirement as to corroboration (Civ. Code, § 130) does not extend to "all of the acts of cruelty charged by the party to whom the decree is granted" (*Serns* v. *Serns* (1945), 70 Cal.App.2d 527, 529 [161 P.2d 417] ), but "corroboration of a single act of cruelty may be sufficient." (*Ibid.*) And in a contested action where "there is no collusion the court is justified in granting the decree upon evidence which is only slightly corroborated if otherwise the court is satisfied that the prevailing party is entitled to a decree." (*Ibid.*) To the same effect *Bradley* v. *Bradley* (1949), 94 Cal.App.2d 310 [210 P.2d 537, 211 P.2d 638] ; *Dowd* v. *Dowd* (1952), 111 Cal.App.2d 760, 763 [245 P.2d 339].

Corroboration of the excessive drinking in the instant case would sufficiently fulfill the mandate of the statute. In *Stanton* v. *Stanton, supra* (1931), 113 Cal.App. 462, the court passed upon appellant's objection that the court's findings as to "the issue of extreme cruelty are unsupported by evidence, properly corroborated, of any act or conduct other than excessive indulgence in intoxicating liquor and that evidence of such indulgence standing alone is insufficient . . . ." (P. 464.) The trial court had granted the divorce upon six specifications, one of which constituted excessive drinking. The appellate court held corroboration of that specification, among others, adequate, saying, "As to three of such specifications, viz: excessive drinking, continued absence from home until late hours, and reputation for intemperance, testimony corroborative of that of respondent herself was produced. . . . We therefore conclude that the court's finding that appellant was guilty of extreme cruelty is sufficiently sustained by the evidence presented by respondent." (Pp. 464-465.) The court's inclusion of the drinking as a specification which, as corroborated, could sustain the decree shows the drinking to be a sufficient basis for corroboration. The presence of the co-existing specifications of the late hours and the poor reputation does not detract from the force of the corroboration of the drinking to serve, in itself, the necessary purpose. We can see no logical reason for holding that a

divorce which is granted upon a number of grounds, including drinking, cannot be corroborated upon any one of these grounds.

The testimony of Mrs. Clark, respondent's mother, at whose home the parties resided, corroborates the fact of excessive drinking. Her testimony is replete with confirmation of appellant's alcoholism; a typical instance is the following statement, "Again at the end of 1956. She would come home intoxicated. There were a couple of times there was a short period there were bottles under the bed and the usual thing."

Corroboration of appellant's residence likewise appears in the testimony of Mrs. Clark. She stated that the parties, who were married on January 27, 1954, lived at her home in San Francisco, California, during their married life. The parties separated on February 15, 1957; respondent filed his complaint on February 26, 1957. She specifically testified that the parties resided at her home after New Year's, 1957. The record contains no denial by appellant of respondent's residence.

The language of *Ungemach* v. *Ungemach* (1943), 61 Cal. App.2d 29 [142 P.2d 99], applies to the instant situation: "Read as a whole, the evidence shows the act of residence for the required periods, and the requisite intent to make Mariposa County his home is reasonably inferable from that evidence. So far as corroboration is concerned, there is no reasonable doubt, and no serious contention is made to the contrary, that the evidence amply corroborates the fact that respondent was physically in the state more than one year prior to the filing of the action. . . ." (P. 38.)

In conclusion, our difficulty with appellant's position, despite our sympathy for her because of her unfortunate addiction, lies in the very limited nature of appellate review. The problem of the breakdown of marriage due to alcoholism presents wide social issues which this record, the decisions, the functions of this court, do not enable us to resolve. On this record we cannot uphold appellant's defense.

We affirm the judgment.

Bray, P. J., and Duniway, J., concurred.